OPINION
{¶ 1} Plaintiffs-appellants, William L. Ridenour, Jack D. Limle, Arthur L. Schnipper, George D. Bannister, Charles E. Boussum, Richard S. Wells, and Ralph J. Reece, all prison inmates proceeding pro se, appeal from a judgment of the Franklin County Court of Common Pleas granting the Civ.R. 12(C) motion for judgment on the pleadings of defendant-appellee, Reginald A. Wilkinson, in his capacity as Director of the *Page 2 
Ohio State Department of Rehabilitation and Corrections ("ODRC"). Because plaintiffs allege no claims entitling them to declaratory and injunctive relief, we affirm.
 {¶ 2} Plaintiffs are prison inmates who were convicted and sentenced for crimes committed before July 1, 1996. From the beginning of their incarceration until 1998, plaintiffs received free healthcare from ODRC, including medical and dental services, over-the-counter ("OTC") medication, and medically related products. Effective March 17, 1998, the General Assembly enacted R.C. 5120.56, a financial responsibility statute authorizing ODRC to recover costs associated with the supervision and incarceration of criminal offenders in its custody or under its supervision.
 {¶ 3} In particular, R.C. 5120.56(D)(1) authorizes ODRC to assess inmates for "[a]ny user fee or copayment for services at a detention facility or housing facility, including, but not limited to, a fee or copayment for sick call visits[.]" Effective September 6, 2002, the statute was amended to add subdivision (D)(7), which authorizes ODRC to collect "[t]he cost of any medical care provided to the offender." As directed in R.C. 5120.56(F), ODRC adopted rules to implement the medical care cost recovery provisions of the statute. See Ohio Adm. Code5120-5-13, effective May 16, 1998, and Policy Directives 69-OCH-02 and 68-MED-15.
 {¶ 4} Pursuant to the statute, rule, and policy provisions, inmates are notified of applicable healthcare charges, and procedures are established for (1) ODRC to collect the charges from inmates' institutional accounts and (2) inmates to contest charges through informal complaints and an institutional grievance system. R.C.5120.56(B), (F)(2)(3), and (I); Ohio Adm. Code 5120-5-13(C), (D) and (E); Policy 68-MED-15. Pertinently, Ohio Adm. Code 5120-5-13(A) states that "[n]o inmate shall be denied needed *Page 3 
medical treatment because of a lack of ability to pay * * * [and] shall receive appropriate medical care based on their present need, without regard to financial status." See, also, Policy 68-MED-15 (exempting "indigent inmates" from co-pay fees). ODRC's policy further provides that inmates receive significant categories of medical services without charge, including routine physical and dental examinations, preventative health care education, obstetric care, all mental health care, treatments connected with chronic medical problems, and follow-up treatments for conditions first diagnosed at an examination subject to a co-payment. Id.
 {¶ 5} In 1998, as R.C. 5120.56 and its implementing rule and policy directives authorize, ODRC began charging and collecting $3 co-payments from plaintiffs and other inmates for certain medical and dental services and for the cost of OTC medication and other medically related products, except as specifically exempted or waived by ODRC rule or policy. See R.C. 5120.56; Ohio Adm. Code 5120-5-13(B); and Policy Directives 69-OCH-02 and 68-MED-15.
 {¶ 6} On January 26, 2006, plaintiffs filed a complaint for declaratory judgment and injunctive relief in the Franklin County Court of Common Pleas on behalf of themselves and a class consisting of all prison inmates in Ohio (collectively, "plaintiffs") who were imprisoned before July 1, 1996 or upon whom a court imposed a term of imprisonment for a crime committed before that date. Plaintiffs' complaint challenged the retroactive application to them of the provisions in R.C. 5120.56, Ohio Adm. Code 5120-5-13, and ODRC Policy 69-OCH-02 requiring them to make co-payments for healthcare services and pay costs of OTC medications and other medically related products. Plaintiffs' complaint alleges the medical care cost recovery provisions, first made effective *Page 4 
in 1998, do not apply to them because R.C. 5120.021, as in effect on July 1, 1996, provided that offenders who were imprisoned before July 1, 1996 are subject to the law in R.C. Chapter 5120 as it was in effect before, not after, July 1, 1996. Plaintiffs also allege in their complaint that under ODRC's customs and practices and the law in effect before July 1, 1996, inmates were provided free medical care and medication, including OTC medication and medically related products.
 {¶ 7} Plaintiffs sought a declaration from the court that ODRC's retroactive application to plaintiffs of the medical care cost recovery provisions is a material breach of contract rights of four plaintiffs who entered into plea agreements with the state before July 1, 1996, and violates constitutional due process and ex post facto rights of all the plaintiffs. Plaintiffs requested the court to enjoin ODRC from charging and collecting healthcare co-payments and fees from plaintiffs.
 {¶ 8} On May 17, 2006, ODRC filed a motion for judgment on the pleadings pursuant to Civ.R. 12(C) contending plaintiffs' complaint fails to state a claim upon which relief can be granted. ODRC argued nothing in R.C. 5120.021 prevents it from charging and collecting healthcare co-payments and fees from inmates incarcerated for crimes committed before July 1, 1996.
 {¶ 9} In its February 9, 2007 decision, the trial court observed that R.C. 5120.021 was amended effective May 18, 2005, modifying the statute's existing provisions and adding division (C). According to that amendment, "[n]othing in this section limits or affects the applicability" of any provision in R.C. Chapter 5120, "as amended or enacted on or after July 1, 1996, that pertains to an issue other than the duration or potential *Page 5 
duration of incarceration or supervised release, to persons in custody or under the supervision of the department of rehabilitation and correction."
 {¶ 10} Following Woods v. Ohio Dept. of Rehab. Corr. (Mar. 7, 2006), C.C. No. 2003-08410, 2006-Ohio-1800, and Gilbert v. Wilkinson (July 24, 2006), Franklin Cty. C.P. No. 06CVH02-1864, the trial court held that R.C. 5120.021, as amended, does not preclude ODRC from charging and collecting healthcare co-payments and fees from plaintiffs because "these items do not pertain to the duration or potential duration of incarceration or supervised release [of plaintiffs]." The trial court determined that division (C) of the statute clarifies the General Assembly's intent that R.C. 5120.021, as amended, applies retroactively and does not affect medical co-pays.
 {¶ 11} Concluding the bases of plaintiffs' claims "have no grounding in fact or law" and each of plaintiffs' claims arises from their "erroneous belief that the retroactive application of R.C. 5120.56 is a violation of their rights[,]" the court dismissed plaintiffs' complaint, granted ODRC's motion for judgment on the pleadings, and deemed moot any remaining motions.
 {¶ 12} Plaintiffs appeal, assigning the following errors:
 ASSIGNMENT OF ERROR I:
 THE LOWER COURT ERRED TO THE PREJUDICE OF THE APPELLANTS IN FINDING THAT APPELLANTS' CLAIMS HAVE NO GROUNDING IN FACT OR LAW, AND THEREFORE, APPELLANTS HAVE NO RIGHT TO MAINTAIN AN ACTION PURSUANT TO THE DECLARATORY JUDGMENT ACT.
 ASSIGNMENT OF ERROR NO. II:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANTS IN FAILING TO PROPERLY CONSIDER CONTROLLING CASE LAW AUTHORITY FROM THE *Page 6 
TENTH DISTRICT OF OHIO AND THE UNITED STATES SUPREME COURT.
 ASSIGNMENT OF ERROR NO. III:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANTS IN FAILING TO PROPERLY APPLY THE STANDARD OF REVIEW REQUIRED BY OHIO CIVIL RULE 12 IN CONSIDERING THE APPELLEE'S MOTION FOR JUDGMENT ON THE PLEADINGS AND THAT, IN EFFECT, THE COURT CONVERTED THE MOTION TO A SUMMARY JUDGMENT MOTION WITHOUT GIVING APPELLANTS NOTICE OR AN OPPORTUNITY TO PRESENT RELEVANT MATERIALS.
 ASSIGNMENT OF ERROR NO. IV:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANTS IN ADMITTING HEARSAY EVIDENCE IN VIOLATION OF THE PROVISIONS OF EVIDENCE RULE 802, WHEN THE TRIAL COURT ACCEPTED DEFENDANT'S ALLEGATIONS THAT "NO INMATE IS DENIED MEDICAL SERVICES BECAUSE OF HIS OR HER INABILITY TO PAY THE CO-PAY," AND IF THE INMATE DOES NOT HAVE MONEY, "THE DEFENDANT REPRESENTS TO THE COURT THAT THE FEES ARE WAIVED." UPON ACCEPTING THESE ALLEGATIONS FROM THE DEFENDANT, THE TRIAL COURT IS REQUIRED, UNDER CIVIL RULE 12 TO TREAT DEFENDANT'S MOTION AS A MOTION FOR SUMMARY JUDGMENT AND GIVE APPELLANTS NOTICE AND A REASONABLE OPPORTUNITY TO PRESENT ALL MATERIALS MADE PERTINENT TO SUCH MOTION BY CIV.R. 56.
 ASSIGNMENT OF ERROR NO. V:
 THE TRIAL COURT'S FAILURE TO CONDUCT A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION HEARING PRIOR TO ITS DECISION ON APPELLEE'S MOTION FOR JUDGMENT ON THE PLEADINGS DENIES APPELLANTS THE PROCEDURAL DUE PROCESS THEY ARE GUARANTEED UNDER ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION AND THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION. *Page 7 
 ASSIGNMENT OF ERROR NO VI:
 THE TRIAL COURT ABUSED ITS DISCRETION IN RELYING UPON AND FINDING THE FACTS OF WOODS V. ODRC, COURT OF CLAIMS, CASE NO. 2003-08410, 2006-OHIO-1800, AND GILBERT V. WILKINSON (JULY 24, 2006), FRANKLIN COUNTY COURT OF COMMON PLEAS, CASE NO. 06CVH02-1864, TO BE CONTROLLING AND DETERMINATIVE CASE LAW AUTHORITY FOR APPELLANTS' FACTS AND CLAIMS.
 ASSIGNMENT OF ERROR NO. VII:
 THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO PROPERLY CONSIDER APPELLANT RIDENOUR'S MOTION FOR CLASS CERTIFICATION FIRST IN ORDER, DESPITE THE FACT THAT THE MOTION FOR CLASS CERTIFICATION WAS FILED IN THE TRIAL COURT WELL BEFORE APPELLEE'S MOTION FOR JUDGMENT ON THE PLEADINGS, AND MOREOVER, THE TRIAL COURT FAILED TO FORMALLY ADDRESS FACTORS LISTED IN CIVIL RULE 23 IN DECIDING TO RENDER THE MOTION FOR CLASS CERTIFICATION AS MOOT.
 ASSIGNMENT OF ERROR NO. VIII:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANTS BY DETERMINING THAT APPELLANT RIDENOUR'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION IS MOOT WITHOUT FIRST CONSIDERING THE EXCEPTION TO THE MOOTNESS DOCTRINE.
 ASSIGNMENT OF ERROR NO. IX:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANTS BY MISCONSTRUING THE FACTS IN THEIR COMPLAINT IN FINDING THAT EACH APPELLANT ENTERED INTO A PLEA AGREEMENT.
 ASSIGNMENT OF ERROR NO. X:
 THE TRIAL COURT COMMITTED PLAIN ERROR BY SUSTAINING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS WHILE THE ISSUES IN APPELLANTS' COMPLAINT ARE CLEARLY DRAWN, AND THE QUESTIONS OF FACT ARE UNRESOLVED BY THE OPENING STATEMENTS OF THE PARTIES. *Page 8 
 {¶ 13} Several of plaintiffs' assignments of error are interrelated. We combine and address plaintiffs' assignments of error in such order as facilitates our analysis of the issues.
 {¶ 14} Initially, plaintiffs assert the trial court erred in concluding they cannot maintain an action for declaratory judgment and injunctive relief because their retroactivity claims under R.C. 5120.56
"have no grounding in fact or law" and thus entitle ODRC to judgment on the pleadings. Plaintiffs argue the trial court, in entering judgment on the pleadings, essentially found plaintiffs cannot maintain their declaratory judgment action because no real "controversy" exists. Plaintiffs contend a real controversy exists in this case because the pleadings clearly draw the issues for decision and questions of material fact remain, precluding entry of judgment.
 {¶ 15} A declaratory judgment action is a civil proceeding that provides a remedy in addition to other available legal and equitable remedies. Curtis v. Ohio Adult Parole Auth., Franklin App. No. 04AP-1214, 2006-Ohio-15, at ¶ 25, citing Fugett v. Ghee, Franklin App. No. 02AP-618, 2003-Ohio-1510, at ¶ 15. To maintain an action for declaratory judgment, a real controversy must exist between the parties that is justiciable in character and necessitates speedy relief to preserve the rights of the parties that may otherwise be impaired or lost. Id. A "controversy" exists where there is a genuine dispute between parties with adverse legal interests; a "justiciable issue" requires the existence of a legal interest or right. Hill v. Croft, Franklin App. No. 05AP-424, 2005-Ohio-6885, at ¶ 12; Curtis, supra, citing Festi v. Ohio Adult Parole Auth., Franklin App. No. 04AP-1372,2005-Ohio-3622, at ¶ 11. *Page 9 
 {¶ 16} Civ.R. 12(C) states that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." A Civ.R. 12(C) motion for judgment on the pleadings presents only questions of law. Footbank, Inc. v. CompuServe,Inc. (2000), 138 Ohio App.3d 801, 807, appeal not allowed,90 Ohio St.3d 1493. In reviewing the trial court's decision to grant such a motion, this court conducts a de novo review of the legal issues without deference to the trial court's determination. Id. Determination of a motion for judgment on the pleadings is restricted solely to the allegations in the pleadings, as well as any material incorporated by reference or attached as exhibits to those pleadings. Curtis, supra, at ¶ 24, citing Drozeck v. Lawyers Title Ins. Corp. (2000),140 Ohio App.3d 816, 820; Peterson v. Teodosio (1973), 34 Ohio St.2d 161, 165; Civ.R. 7(A) and 10(C).
 {¶ 17} Dismissal of a complaint is appropriate under Civ.R. 12(C) where, construing all material allegations in the complaint along with all reasonable inferences drawn therefrom in favor of the nonmoving party, the court finds that the plaintiffs can prove no set of facts in support of their claim that would entitle them to relief. State ex rel.Midwest Pride IV, Inc. v. Pontious (1996), 75 Ohio St.3d 565, 570. Thus, a court may grant a Civ.R. 12(C) motion only if no disputes of material fact exist and the pleadings demonstrate that the movant is entitled to judgment as a matter of law. Id.
 {¶ 18} Notably, although plaintiffs argue the amendments to R.C.5120.021 are irrelevant, they do not challenge on appeal the trial court's determination that the medical care cost recovery provisions in R.C. 5120.56, Ohio Adm. Code 5120-5-13, and Policy 69-OCH-02 apply retroactively. Rather, in their sixth assignment of error plaintiffs contend the trial court erred in entering judgment against them, in reliance upon Woods and *Page 10 Gilbert, supra, before deciding issues that the pleadings clearly draw: whether plaintiffs' plea agreements were breached and whether their constitutional due process and ex post facto rights were violated through the retroactive application of the provisions. Plaintiffs argue the trial court erred first by failing to fully address their breach of contract claim and whether retroactive application of the medical care cost recovery provisions breaches contractual rights of four plaintiffs who entered into plea agreements with the state before the provisions were enacted. They contend the court erred further by failing to giveany consideration to plaintiffs' due process and ex post facto claims.
 {¶ 19} Our review of the trial court's decision reveals the trial court failed to fully consider and decide plaintiffs' breach of contract, due process, and ex post facto claims alleged in their complaint. Plaintiffs' sixth assignment of error is thus sustained to the extent the trial court relied on Woods and Gilbert in entering judgment without resolving all of plaintiffs' claims. However, a remand for the trial court to resolve plaintiffs' claims is unnecessary because this court conducts a de novo review of the legal issues and the allegations in the pleadings to determine whether dismissal of plaintiffs' complaint is appropriate under Civ.R. 12(C). Thus, we are able to determine on appeal whether plaintiffs have presented any claim in their complaint entitling them to declaratory or injunctive relief.Peterson; Curtis; Midwest Pride IV, supra. We address each of plaintiffs' claims in turn.
1. Breach of Contractual Rights under Plea Agreements {¶ 20} Plaintiffs' breach of contract claim, reduced to its essence, alleges four plaintiffs entered into contractual plea agreements with the state prior to 1996 in reliance on the law and ODRC's custom and practice at the time to provide free healthcare and *Page 11 
medication to prisoners. Plaintiffs allege ODRC breached the plaintiffs' plea agreements each time since 1998 it required them to pay healthcare co-pays and fees pursuant to R.C. 5120.56, Ohio Adm. Code 5120-5-13, and ODRC Policy 69-OCH-02. Notably, plaintiffs' complaint contains no allegation that ODRC denied appropriate or needed healthcare or medication to inmates who lack an ability to pay. Furthermore, plaintiffs do not dispute that under its policy and practice ODRC (1) provides inmates with appropriate medical care based on their present need regardless of their ability to pay for the care, (2) exempts indigent inmates from co-pay fees, and (3) provides significant categories of medical services to all inmates without charge. Ohio Adm. Code 5120-5-13(A); ODRC Policy 68-MED-15.
 {¶ 21} Plaintiffs contend in their second assignment of error the trial court ignored controlling case law when it dismissed their claim for breach of contractual rights under plea agreements, summarily concluding that each of plaintiffs' claims has "no grounding in fact or law" and "arises from the plaintiffs' erroneous belief that the retroactive application of R.C. 5120.56 is a violation of their rights." Plaintiffs are correct that a plea agreement is a contract between the state and a defendant that is subject to contract law standards, and the law in effect at the time a plea agreement is entered is part of the contract. Ankrom v. Hageman, Franklin App. No. 04AP-984, 2005-Ohio-1546, at ¶ 27-28; State v. Butts (1996), 112 Ohio App.3d 683, 685-686;Santobello v. New York (1971), 404 U.S. 257. See, also, Layne v. OhioAdult Parole Auth., 97 Ohio St.3d 456, 2002-Ohio-6719. Plaintiffs, however, are incorrect in asserting that, under the law in effect at the time the four plaintiffs entered into their plea agreements in this case, the state was obligated by law to provide incarcerated inmates with free healthcare and medication. *Page 12 
 {¶ 22} As support for their contention that the law prior to 1996 required ODRC to provide incarcerated inmates with free healthcare and medication, plaintiffs rely on the United States Supreme Court decisions in Estelle v. Gamble (1976), 429 U.S. 97 and DeShaney v. Winnebago Cty.Dept. of Soc. Serv. (1989), 489 U.S. 189. As authority in Ohio, plaintiffs rely on R.C. 2921.44(C)(2), State ex rel. Carter v.Schotten (1994), 70 Ohio St.3d 89, and Ankrom, supra. Plaintiffs' reliance is unavailing because none of these authorities holds that incarcerated inmates have a constitutional or legal entitlement tofree healthcare.
 {¶ 23} In Estelle, at 103-104, 105, the United States Supreme Court held the government has an "obligation to provide [adequate] medical care for those whom it is punishing by incarceration," reasoning "`[i]t is but just that the public be required to care for the prisoner, who cannot by reason of the deprivation of his liberty, care for himself[,]'" quoting Spicer v. Williamson (1926), 191 N.C. 487, 490. InDeShaney, and Helling v. McKinney (1993), 509 U.S. 25, 32, the court commented that pursuant to its decision in Estelle the government has a duty to provide adequate medical care. Other federal courts have reached similar conclusions. See, e.g., Hollenbaugh v. Maurer (N.D.Ohio 2005),397 F.Supp.2d 894, 903, affirmed (C.A.6, 2007), 221 Fed.Appx. 409, andDanese v. Asman (C.A.6, 1989), 875 F.2d 1239, 1243, certiorari denied,494 U.S. 1027 (recognizing that anyone who is incarcerated has a due process right to adequate medical care); Reynolds v. Wagner (C.A.3, 1997), 128 F.3d 166, 174 (determining Estelle held "a state must provide inmates with basic medical care").
 {¶ 24} Noting the states should decide what constitutes adequate medical care for their prisoners, the United States Supreme Court observed in Estelle that "contemporary *Page 13 
standards of decency" are manifested in legislation and regulations the states adopt "which specify, in varying degrees of detail, the standards of medical care to be provided to prisoners." Estelle, at 103-104, fn. 8. The court did not expressly tackle whether states must providefree healthcare to inmates. But, see, City of Revere v. MassachusettsGen. Hosp. (1983), 463 U.S. 239, 245, fn. 7 (noting "[n]othing we say here affects any right a hospital or government entity may have to recover from a detainee the cost of medical services provided to him").
 {¶ 25} Other federal courts, however, addressed the issue. InReynolds, the federal court found "there is nothing unconstitutional about a program that `require[s] that inmates with adequate resources pay a small portion of their medical care.'" Id. at 174, quoting the district court in Reynolds (E.D.Pa.1996), 936 F.Supp 1216, 1224. The federal appellate court concluded "such a requirement simply represents an insistence that the prisoner bear a personal expense that he or she can meet and would be required to meet in the outside world."Reynolds, at 174. See, also, Martin v. Debruyn (N.D.Ind.1995),880 F.Supp. 610, 614 (stating "[n]othing * * * requires a state to provide an inmate, free of charge, with a necessary commodity that would not be free outside the prison walls and which the inmate has the legal means to obtain"); Bihms v. Klevenhagen (S.D.Tex.1996), 928 F.Supp. 717, 718
(concluding that "[i]f the inmate can pay for his medical care, then the state may require reimbursement"); Shapley v. Nevada Bd. of State PrisonCommrs. (C.A.9, 1985), 766 F.2d 404, 408 (finding no violation underEstelle in charging an inmate $3 for every medical visit where there is no allegation that prison officials denied medical care to inmates who were unable to pay). *Page 14 
 {¶ 26} Contrary to plaintiffs' contention, the Ohio General Assembly did not statutorily obligate the state to provide incarcerated inmates with free healthcare when the four plaintiffs entered into the plea agreements at issue here. Rather, since 1974, R.C. 2921.44(C)(2) has required ODRC "to provide persons confined in [a] detention facility with adequate food, clothing, bedding, shelter, and medical attention." In Carter, the Supreme Court of Ohio held the state has a duty under the statute to provide incarcerated inmates with adequate clothing, one of the basic human needs identified in the statute. Id. The court did not hold that inmates should never bear any cost, if they were financially able to do so, of the state's meeting their basic needs.
 {¶ 27} Plaintiffs' reliance on Ankrom also is unavailing.Ankrom held that offenders who entered into plea agreements before July 1, 1996 could justifiably expect that the law then in effect concerning the duration of incarceration and parole eligibility was part of their contractual plea agreement. See Layne, at ¶ 28 (holding offenders could justifiably rely on statutorily based parole eligibility standards in effect when offenders enter plea agreements). Here, parole eligibility and the duration of incarceration are not at issue. Additionally, unlikeAnkrom, when plaintiffs entered into their plea agreements no statute was in effect that gave rise to a justifiable expectation of legal entitlement to free healthcare and medication for the term of their incarceration.
 {¶ 28} In the final analysis, ODRC was legally obligated under the law in effect prior to 1996 to provide incarcerated prisoners with adequate, basic healthcare; it was not legally obligated to provide free healthcare to inmates who had the financial ability to pay for the care. As a result, plaintiffs entering into plea agreements before 1996 could not justifiably expect they had a legal entitlement, enforceable as a contractual right, to free *Page 15 
healthcare and medication for the term of their incarceration. Moreover, because plaintiffs did not allege that ODRC denied appropriate or needed healthcare to any inmate who lacks the financial ability to pay for the care, plaintiffs failed to allege that either before or after 1996 ODRC breached any legal obligation to provide adequate healthcare to incarcerated inmates. Because plaintiffs' claim for breach of contractual rights under plea agreements presents no controversy that is justiciable in character, they cannot maintain their declaratory judgment action on this basis. Their second assignment of error is overruled.
 {¶ 29} Plaintiffs' ninth assignment of error contends the trial court erred in finding that "each" of the plaintiffs in this action "pled guilty to criminal charges against them prior to 1996." Plaintiffs' complaint for declaratory judgment and injunctive relief identifies seven prison inmates who are plaintiffs in this action, four of whom the complaint specifically alleges entered into plea agreements with the state prior to 1996. The complaint contains no allegations regarding the bases for the remaining three plaintiffs' convictions: whether they were found guilty following bench or jury trials or as the result of a court's acceptance of guilty or no contest pleas.
 {¶ 30} Based on the specific allegations in the complaint, the trial court in this case was mistaken when it stated that all, rather than four, of the plaintiffs entered into plea agreements with the state prior to 1996. Nevertheless, any error was harmless because any plaintiff who was not convicted and sentenced as the result of a plea agreement suffers no prejudice upon the dismissal of plaintiffs' breach of plea agreement claim. Plaintiffs' ninth assignment of error is accordingly overruled. *Page 16 
2. Violation of Constitutional Due Process {¶ 31} Plaintiffs claim the medical care cost recovery provisions in R.C. 5120.56, Ohio Adm. Code 5120-5-13, and ODRC Policy 69-OCH-02 are unconstitutionally retroactive under Section 28, Article II of the Ohio Constitution because application of the provisions to plaintiffs deprives them of a property interest without due process by requiring them to pay for healthcare, OTC medication, and medically related products that were provided to them without charge before the statute, rule, and policy provisions were enacted.
 {¶ 32} Statutes enjoy a strong presumption of constitutionality, and a party seeking to have a statute declared unconstitutional must prove its unconstitutionality beyond a reasonable doubt. In re Braydon James,113 Ohio St.3d 420, 2007-Ohio-2335, at ¶ 13; State v. Anderson (1991),57 Ohio St.3d 168, 171. An appellate court's review of the constitutionality of a statute is de novo. See State v. Cook (1998),83 Ohio St.3d 404.
 {¶ 33} Administrative regulations issued pursuant to statutory authority have the force of law unless they are unreasonable or conflict with the statute. Youngstown Sheet Tube Co. v. Lindley (1988),38 Ohio St.3d 232, 234. Thus, any prohibition against retroactive laws pertaining to legislative enactments applies to rules and regulations promulgated by administrative agencies. See Martin v. Ohio Dept. ofHuman Serv. (1998), 130 Ohio App.3d 512 (addressing retroactivity of regulation regarding Medicaid eligibility); Murphy v. Ohio Dept. ofHighway Safety (1984), 18 Ohio App.3d 99 (subjecting an agency's regulation to retroactivity analysis); Fraternal Order of Police v.Hunter (1975), 49 Ohio App.2d 185 (finding rule promulgated by administrative agency subject to prohibitions against retroactive laws). *Page 17 
 {¶ 34} Section 28, Article II of the Ohio Constitution prohibits the General Assembly from passing retroactive laws and protects vested rights from new legislative encroachments. Smith v. Smith,109 Ohio St.3d 285, 2006-Ohio-2419, at ¶ 6, citing Vogel v. Wells (1991),57 Ohio St.3d 91, 99. "The retroactivity clause nullifies those new laws that `reach back and create new burdens, new duties, new obligations, or new liabilities not existing at the time [the statute becomes effective].'"Bielat v. Bielat (2000), 87 Ohio St.3d 350, 352-353, quoting Miller v.Hixson (1901), 64 Ohio St. 39, 51. "Retroactivity is unconstitutional if it `takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past.'"State v. Williams, 103 Ohio St.3d 112, 2004-Ohio-4747, at ¶ 7, quotingVan Fossen v. Babcock Wilcox Co. (1988), 36 Ohio St.3d 100, 106;Bielat, at 354.
 {¶ 35} A purely remedial law does not violate Section 28, Article II
of the Ohio Constitution, even when it is applied retroactively.Bielat, supra, citing Cook, at 411. Generally, laws that relate to procedures are remedial in nature. Cook, supra; Van Fossen, at 107. Curative laws are a valid form of retroactive, remedial legislation where "`in the exercise of its plenary powers, the legislature * * * [can] cure and render valid, by remedial retrospective statutes, that which it could have authorized in the first instance.'" Bielat, at 355-356, quoting Burgett v. Norris (1874), 25 Ohio St. 308, 316.
 {¶ 36} In Bielat, the Supreme Court of Ohio observed Ohio courts have consistently held that in order for a retroactive law to unconstitutionally impair a right, "not just any asserted `right' will suffice." Id. at 357. The court explained the impaired right must be a "vested right," an "accrued substantive right," a "substantive right," or a "vested *Page 18 
substantive right." Id., citing Cook, at 411, Gregory v. Flowers (1972),32 Ohio St.2d 48, paragraph three of the syllabus, Van Fossen, at paragraph four of the syllabus, and State ex rel. Matz v. Brown (1988),37 Ohio St.3d 279, 281. Indeed, "where no vested right has been created, `a later enactment will not burden or attach a new disability to a past transaction or consideration in the constitutional sense, unless the past transaction or consideration * * * created at least a reasonable expectation of finality.'" Cook, at 412, quoting Matz, supra;Bielat, supra.
 {¶ 37} Here, the medical care cost recovery provisions are "curative," and therefore remedial in nature, because in enacting the financial responsibility statute, R.C. 5120.56, the Ohio legislature was merely authorizing something "it could have authorized in the first instance."Bielat, supra, at 355-356. Plaintiffs had no legal entitlement, and therefore no vested right, to free healthcare, but they do have a protected property interest in the funds in their institutional accounts. Hampton v. Hobbs (C.A.6, 1997), 106 F.3d 1281, 1287;Stanley v. Ohio Dept. of Rehab. Corr (S.D.Ohio 2002), No. C2-02-178;Bailey v. Carter (C.A.6, 2001), 15 Fed.Appx. 245, 251. Thus, plaintiffs are entitled to due process with respect to any deprivation of their money. Reynolds, supra, at 179, citing Mahers v. Halford (C.A.8, 1996),76 F.3d 951, 954, certiorari denied, 519 U.S. 1061.
 {¶ 38} In this case, plaintiffs are not "deprived" of their property without due process. The co-payments and fees are deducted from prisoner accounts in exchange for medical services. Plaintiffs have not alleged that they did not receive healthcare services for which they are charged, or that the benefit of the healthcare services they receive is less than the modest fees they are assessed. See Stanley andBailey, supra (finding *Page 19 
Ohio's statute and rule requiring inmates to make a $3 co-payment for medical services if they have available funds does not deprive the inmates of their property without due process). Nor do plaintiffs allege they are deprived of procedural due process as a result of deficient notification procedures or inadequate post-deprivation grievance procedures. Cf. Bailey, supra; Reynolds, at 179-181.
 {¶ 39} Because (1) the medical care cost recovery provisions are remedial in nature, and (2) plaintiffs' allegations do not support a claim that application of the provisions to plaintiffs deprives them of a property interest without due process, plaintiffs' due process claim under Section 28, Article II of the Ohio Constitution is without support in fact or law. Thus, no controversy that is justiciable in character exists concerning plaintiffs' due process claim, and they are unable to maintain their declaratory judgment action on this basis.
3. Violation of Ex Post Facto Clause {¶ 40} Plaintiffs claim that retroactive application to them of the medical care cost recovery provisions in R.C. 5120.56, Ohio Adm. Code5120-5-13, and ODRC Policy 69-OCH-02 violates the Ex Post Facto Clause of the United States Constitution because the provisions are punitive in nature.
 {¶ 41} Section 10, Article I of the United States Constitution prohibits the states from passing any ex post facto laws. CaliforniaDept. of Corrections v. Morales (1995), 514 U.S. 499; Cook, supra, at 414. "[T]he Ex Post Facto Clause applies only to criminal statutes."Cook, supra, at 415, citing Morales, supra, and Colllins v.Youngblood (1990), 497 U.S. 37, 43. It "is aimed at laws that `retroactively alter the definition of crimes or increase the punishment for criminal acts.'" Morales, quoting Collins, supra, citingCalder *Page 20 v. Bull (1798), 3 U.S. [Dall.] 386, 391-392 (opinion of Chase, J.);Beazell v. Ohio (1925), 269 U.S. 167, 169-170; Cook, supra.
 {¶ 42} The Ohio statute and administrative provisions at issue are not laws susceptible to ex post facto analysis. Stanley, supra. The statute and regulatory provisions are not criminal statutes, and the imposition of co-payments and charges for medical services upon inmates does not redefine their crimes or increase their punishment for criminal acts. Id.; Bailey, supra (finding R.C. 5120.56 and Ohio Adm. Code 5120-5-13
impose no punishment on inmates and thus do not violate the Ex Post Facto Clause). See, also, Baker v. Gonzalez (E.D.Ky. 2007), Civil Action No. 06-CV-91-HRW (finding Kentucky inmate co-payment policy does not constitute "punishment" and is not an unconstitutional ex post facto law); Harris v. Ozmint (D.S.C. 2006), No. 8:05-2209-HMH-BHH (South Carolina inmate co-pay program is not an unconstitutional ex post facto law because "charges for medical services * * * are clearly not punitive in nature").
 {¶ 43} Plaintiffs' claim alleging a violation of the Ex Post Facto Clause lacks an arguable basis in law. Stanley; Bailey, supra. Accordingly, plaintiffs cannot maintain their declaratory judgment action on this basis because the claim presents no controversy that is justiciable in character.
 {¶ 44} Having found plaintiffs cannot maintain their action for declaratory judgment on their breach of contract, due process, and ex post facto claims, we conclude ODRC was entitled to judgment on the pleadings. Accordingly, we overrule plaintiffs' first assignment and overrule the sixth assignment of error in part. *Page 21 
4. Procedural Issues {¶ 45} Plaintiffs' seventh assignment of error contends the trial court erred when it granted judgment on the pleadings before formally addressing the factors listed in Civ.R. 23 and deciding whether class certification is appropriate in this case. Plaintiffs' contention is without merit.
 {¶ 46} Although plaintiffs' complaint for declaratory judgment and injunctive relief contains a count entitled "Class Action," the complaint does not request the court to certify the action as a class action, and plaintiffs did not subsequently file a motion for class certification. Because the issue of class certification was not formally before the trial court for consideration, and the "questions of law or fact common to the class" are without merit, any error in the trial court's granting judgment on the pleadings without first making a determination about class certification is harmless. Plaintiffs' seventh assignment of error is overruled.
 {¶ 47} In their fifth assignment of error, plaintiffs contend the trial court denied them procedural due process when it failed to conduct a hearing and render a decision on plaintiffs' motion for temporary restraining order ("TRO") and preliminary and permanent injunction, before entering judgment on the pleadings and deeming plaintiffs' motion moot.
 {¶ 48} Preliminarily, the record reflects that plaintiffs' motion for TRO and preliminary and permanent injunction, pending at the time the trial court entered judgment on the pleadings, was filed on January 23, 2007, well after ODRC filed its motion for judgment on the pleadings on May 17, 2006. Plaintiffs' motion requested an order enjoining ODRC from interfering with and retaliating against plaintiffs for participating in *Page 22 
the instant litigation. The record is devoid of any indication that plaintiffs requested the trial court to conduct a hearing on their motion for TRO and injunction. Thus, plaintiffs arguably cannot now complain that the trial court failed to conduct a hearing on the motion. See Cavanaugh Bldg. Corp. v. Bd. of Cuyahoga Cty. Commrs. (Jan. 27, 2000), Cuyahoga App. No. 75607.
 {¶ 49} Regardless, because a TRO and preliminary and permanent injunction are at issue, we apply Civ.R. 65, which explicitly addresses these matters. Civ.R. 65 does not require a court to hold a hearing on a TRO. Civ.R. 65(A); Hohmann, Boukis Curtis Co., L.P.A. v. Brunn LawFirm Co., L.P.A. (2000), 138 Ohio App.3d 693, 698-699. Pursuant to Civ.R. 65(A) and (B), a court must hold a hearing on a motion for a preliminary injunction only if a TRO has been granted; a TRO was not granted in this case. Accordingly, plaintiffs were not entitled to a hearing under Civ.R. 65 on their motion for TRO and preliminary injunction, and thus have not been denied procedural due process under the rule.
 {¶ 50} Additionally, we have concluded plaintiffs' action for declaratory judgment cannot be maintained because their claims lack merit. Upon dismissal of their declaratory judgment action, plaintiffs would not be able to show a high probability of success on their underlying claims, irreparable injury, or service of the public interest by issuing a TRO and injunction that are predicated on continuance of the underlying litigation. As a result, any error in the trial court's failing to conduct an evidentiary hearing on plaintiffs' motion for TRO and injunction prior to entering judgment on the pleadings is harmless. See Johnson v. Morris (1995), 108 Ohio App.3d 343, 352-353;Stanley, supra. Because plaintiffs' procedural due process rights were not violated when the trial court failed to conduct a *Page 23 
hearing or render a decision on plaintiffs' motion for TRO and injunction, we overrule plaintiffs' fifth assignment of error.
 {¶ 51} Plaintiffs' eighth assignment of error contends the trial court erred in failing to examine exceptions to the mootness doctrine before it determined that its decision granting judgment on the pleadings rendered their motion for TRO and injunction moot. We decline to address this issue because plaintiffs fail to identify any exception to the mootness doctrine that applies in this case. App.R. 12(A)(2). Plaintiffs' eighth assignment of error accordingly is overruled.
 {¶ 52} In their third and fourth assignments of error, plaintiffs contend the trial court utilized the wrong standard in deciding a motion for judgment on the pleadings under Civ.R. 12(C). Specifically, plaintiffs contend the trial court erroneously admitted hearsay under Evid.R. 802 and considered matters outside the pleadings when it accepted ODRC's "representations," contained in its memorandum in support of its motion for judgment on the pleadings, that "no inmate is denied medical services because of his or her inability to make co-payments" and "fees are waived" if an inmate does not have money in his institutional account. Plaintiffs argue the trial court, in accepting ODRC's representations, effectively converted the motion for judgment on the pleading to a motion for summary judgment without giving plaintiffs notice or an opportunity to respond with pertinent materials.
 {¶ 53} Initially, to the extent ODRC's "representations" simply reference Ohio Adm. Code 5120-5-13(A), adopted under R.C. 5120.56, which states that "[n]o inmates shall be denied needed medical treatment because of a lack of ability to pay [and i]nmates shall receive appropriate medical care based on their present need, without *Page 24 
regard to financial status," they are accurate. Section (B) of the administrative rule then states that fees are waived as provided in ODRC's co-payment policy, which expressly exempts indigent inmates from charges for co-pay fees and reaffirms that no inmate shall be denied needed health care or treatment because of inability to pay. ODRC Policy 68-MED-15(VI)(B)(1). Because plaintiffs' complaint challenges the administrative rule, which expressly references and incorporates ODRC's co-payment policy, the rule and policy provisions were both properly before the court for its consideration in deciding the motion for judgment on the pleadings.
 {¶ 54} Next, even if ODRC's "representations" were meant to reflect how ODRC applies Ohio Adm. Code 5120-5-13(A) in its institutions, the representations were irrelevant because plaintiffs did not allege ODRC acted contrary to the "representations." Plaintiffs' allegations, not ODRC's "representations" were pivotal to determining ODRC's motion for judgment on the pleadings.
 {¶ 55} Finally, even if the trial court converted ODRC's motion for judgment on the pleadings to a motion for summary judgment, plaintiffs were given an opportunity to respond to the motion. In fact, plaintiffs responded by filing a memorandum contra, but they did not assert any "representations" in ODRC's memorandum constituted "matters outside the pleadings" that the court could not consider in deciding the motion for judgment on the pleadings under Civ.R. 12(C). Because plaintiffs failed to raise this issue in the trial court at a time when the trial court could have addressed the matter, we deem the issue waived. Plaintiffs' third and fourth assignments of error are overruled.
 {¶ 56} Plaintiffs' tenth, and final, assignment of error contends judgment on the pleadings is precluded because questions of material fact exist that were raised in the *Page 25 
pleadings. Plaintiffs, however, do not identify the material facts that purportedly remain in dispute and would preclude entry of judgment under Civ.R. 12(C). See Midwest Pride IV, supra. Because plaintiffs fail to identify the specific portions of the record on which their claim of error is based, we decline to address this assignment of error. App.R. 12(A)(2); State ex rel. O'Brien v. Viereck (Aug. 13, 1992), Franklin App. No. 92AP-46. Plaintiffs' tenth assignment of error is overruled.
 {¶ 57} Although we sustained in part and overruled in part plaintiffs' sixth assignment of error, for the reasons noted, a reversal and remand are unnecessary. Having overruled all the remaining assignments of error, we affirm the trial court's entry granting judgment on the pleadings and dismissing plaintiffs' entire action.
Judgment affirmed.
 BROWN and BOWMAN, JJ., concur.
BOWMAN, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution. *Page 1