OPINION
{¶ 1} Plaintiff-appellant, Robert G. Curtis, pro se, appeals from a judgment of the Franklin County Court of Common Pleas dismissing his complaint for declaratory judgment filed against defendant-appellee, Ohio Adult Parole Authority ("APA"). For the reasons that follow, we affirm the trial court's judgment.
 {¶ 2} On April 20, 2004, plaintiff, an inmate incarcerated at the Corrections Reception Center, filed a complaint for declaratory judgment asserting that the APA improperly denied him parole. In particular, plaintiff claimed the APA violated his rights by arbitrarily and unlawfully extending his imprisonment beyond the range suggested by parole board guidelines. Plaintiff also requested injunctive relief, requiring the APA to provide him with a meaningful parole hearing.
 {¶ 3} The allegations in plaintiff's complaint, along with the attachments thereto, provide the following facts. In September 1987, plaintiff was sentenced to ten years to life in prison following his conviction on four counts of rape and three counts of gross sexual imposition involving his minor daughter. (Complaint ¶ 5.) Plaintiff's first parole hearing was in 1997. Id. He was denied release, and the next hearing was scheduled for 2007. Id. In 2001, he was evaluated under the APA's internal parole guidelines adopted in 1998 and revised in 2000. (Complaint ¶ 14.) Those guidelines recommend terms of imprisonment based upon numerical scores for an inmate's offense and risk of reoffense. (Complaint ¶ 6-12.) Citing "duration of the offense," the APA departed from the recommended guideline range and continued plaintiff until 2007. (Complaint ¶ 14.)
 {¶ 4} Following release of the Ohio Supreme Court's decision in Layne v. Ohio Adult Parole Authority, 97 Ohio St.3d 456,2002-Ohio-6719, the APA determined that plaintiff's offense category score had been miscalculated and agreed to rehear the case. (Complaint ¶ 15.) In July 2003, the APA assigned plaintiff an offense category score of 10 and a criminal history/risk score of 0. (Complaint ¶ 16.) The recommended guideline range for an offense category score of 10 and criminal history/risk score of 0 is 120-180 months. Id. The APA departed from the guidelines and recommended an additional 36 months before the next hearing, stating, "aggravating factors of the duration of the offense behavior and lack of full Sex Offender Programming warrant additional time." Id. The APA also recommended that plaintiff undergo a clinical risk assessment and continued the case until September 2003. Id. Plaintiff alleged in the complaint that he already completed sex offender programming, that the APA had not recommended further counseling at either the 1997 or 2001 hearings, and that such counseling was not available at the Corrections Reception Center. Id.
 {¶ 5} Following the clinical risk assessment, plaintiff was reevaluated on September 9, 2003; the case was referred for a central office board review. (Complaint ¶ 17, Exhibit. G.) That review was held on October 23, 2003; parole was denied and the case was continued to September 2006. (Complaint ¶ 18.) According to plaintiff, he was not provided documentation related to the October 23, 2003 review; however, he alleged that "it [was] his understanding" that parole was denied on grounds that in 1991 he wrote what the APA characterized as a "menacing" letter. Id. Plaintiff further alleged that "Richard Spence of the Ohio Parole Board made a vague statement to the effect that the parole board felt that Plaintiff's mental state indicated that he might pose some kind of risk." Id.
 {¶ 6} Following the October 23, 2003 denial, several of plaintiff's family and friends wrote the APA on plaintiff's behalf. (Id., Exhibit I.) Thereafter, on November 11, 2003, "Richard Spence reported that, after reconsideration, the decision remained the same and the case was continued to September 2006." Id. In January 2004, the APA dispatched David Barrinson of the Ohio Department of Rehabilitation and Correction's ("ODRC") Sex Offender Program to meet with plaintiff. (Complaint ¶ 20.) Following the meeting, plaintiff was not provided a report of Barrinson's findings. Id.
 {¶ 7} The APA thereafter rescinded the September 2006 continuance and scheduled a hearing for February 12, 2004. Id. Pursuant to that hearing, APA board member Olivia Karl recommended another central office board review and advised plaintiff that a decision would be forthcoming. (Complaint ¶ 21.) Plaintiff alleged that, as of the filing of his complaint, he had not been notified of the outcome of the central office board review. Id. Plaintiff further alleged that despite repeated requests, he was not provided records relating to the APA's October 23, 2003 decision, thus "mak[ing] it impossible for [him] to address any issues for which he continues to be imprisoned." (Complaint ¶ 22.)
 {¶ 8} On May 6, 2004, plaintiff served the APA with a request for production of documents; the request was filed with the trial court on May 10, 2004. Plaintiff requested all his records from the three penal institutions in which he has been incarcerated following his conviction, as well as all records considered by the APA pertinent to his parole hearings and central office board reviews. In particular, plaintiff requested: a copy of the APA guidelines relied upon each time plaintiff's case was reviewed; all documents prepared in conjunction with the October 23, 2003 central office board review, including, but not limited to, any reports authored by Paul Goldstein, M.D; all documents prepared by Barrinson and Karl pursuant to their interviews with plaintiff; all documents prepared pursuant to the 2004 central office board review; all documents used in calculating plaintiff's criminal history/risk score; and all documents relevant to the APA's decisions to continue plaintiff's case to September 2006.
 {¶ 9} On May 18, 2004, the APA filed an answer, along with several attached exhibits. Among the exhibits were detailed APA records pertaining to plaintiff's parole hearings from 1997, 2001, September 9, 2003, October 23, 2003, February 12, 2004, and March 8, 2004.
 {¶ 10} The record of the 1997 proceeding reveals that parole was denied and plaintiff was continued to 2007 due to the serious nature of the crimes, the young age of the victim, and the fact that the sexual abuse continued over a long period of time. (Answer, Exhibit B.)
 {¶ 11} At the 2001 hearing, the APA assigned plaintiff an offense category score of 10 and a risk score of 0. The guidelines suggested that plaintiff be paroled after serving between 120 and 180 months. The APA departed from the guidelines "due to the duration of the abuse and the age of the victim," reaffirming its prior decision that plaintiff remain in prison until 2007. The record also indicates that the decision was based upon the fact that plaintiff had not completed sexual offender treatment, had refused to acknowledge the full extent of his criminal conduct, and had written an unsolicited letter to a court employee containing sexual overtones. (Answer, Exhibit C.)
 {¶ 12} The record of the September 9, 2003 hearing indicates that plaintiff had completed only a portion of the sexual offender treatment program. The record further indicates that the county prosecuting attorney characterized letters plaintiff wrote to the court employee and her family as "disturbing, menacing, threatening of a sexual nature." (Answer, Exhibit D.)
 {¶ 13} At the October 23, 2003 hearing, plaintiff was again assigned an offense category score of 10 and a risk score of 0; the guidelines again recommended that he be released after serving 120 to 180 months. The APA again departed from the guidelines and continued the case until September 2006, finding "release to be inappropriate at this time based on the offender being a more serious risk than his risk score indicates." (Answer, Exhibit D.) The APA also instructed plaintiff to enter and complete an institutional sex offender program.
 {¶ 14} The February 12, 2004 proceedings record includes an extensive history of the case as reported by Karl following her in-depth interview with plaintiff. (Answer, Exhibit E.) That recitation indicates that plaintiff admitted the crime but attempted to minimize his culpability by asserting allegations about the victim. The record further indicates that a mental health evaluation revealed that plaintiff suffered from an on-going "delusional disorder"; that medication was prescribed, but refused; and that plaintiff "need[ed] to be in a structuring setting." The APA recommended another central office board review.
 {¶ 15} The record of the March 8, 2004 proceedings reveals that the APA again classified plaintiff's offense category at 10 and his risk category at 0. The APA again continued plaintiff to September 2006, finding immediate release to be inappropriate "based upon the offender being a more serious risk than indicated by his risk score." (Answer, Exhibit E.)
 {¶ 16} On June 10, 2004, plaintiff filed a motion to compel, asserting that the APA had not fully complied with his request for production of documents. The APA opposed the motion, asserting that it had produced most of the discoverable documents through either its answer or its response to the discovery request. The APA further asserted that the balance of the requested documents "include sensitive security, psychological and Parole Board records that are never shown to inmates because they would cause security problems, interfere with treatment and/or contain information provided by third parties in reliance upon promised confidentiality." (June 21, 2004 Memorandum Opposing Motion to Compel, at 1-2.)
 {¶ 17} On July 23, 2004, the APA filed a motion for summary judgment or judgment on the pleadings. The APA argued that summary judgment was appropriate pursuant to plaintiff's alleged failure to comply with R.C. 2969.25(C). The APA further contended that judgment on the pleadings was appropriate because the APA's decision to deviate from the recommended guidelines was not unreasonable or arbitrary. In addition, the APA maintained that injunctive relief was not appropriate because plaintiff had received meaningful consideration for parole. Plaintiff filed a response to the APA's motion, to which defendant filed a reply.
 {¶ 18} On July 26, 2004, the trial court filed a decision and entry granting plaintiff's motion to compel. More specifically, the court found that documents relevant to adverse decisions of the central office board, the APA guidelines relied upon in reviewing plaintiff's case, reports written by Dr. Goldstein pursuant to the October 23, 2003 central office board review and documents prepared by Barrinson were "undoubtedly relevant to Plaintiff's declaratory judgment action." (July 26, 2004 Decision and Entry Granting Plaintiff's Motion To Compel, Filed June 10, 2004, at 2.) The trial court noted that the APA had implicitly conceded the relevance of these documents by admitting that it had in the past made such documents available to inmates' counsel, subject to a protective order, in cases where the inmate plaintiff was represented by counsel. The court further noted that the APA had failed to demonstrate how any of the requested documents posed security problems, interfered with treatment, or were protected by a privilege or confidentiality. The trial court ordered the APA to either provide plaintiff with the requested documents noted above or to produce the documents for in camera review by the court, along with specific argument as to how the documents posed security problems, interfered with treatment, or were protected by privilege.
 {¶ 19} Pursuant to the court's order, the APA, on August 16, 2004, submitted the requested documents to the court for in camera review. Plaintiff thereafter filed "objections" to the in camera review.
 {¶ 20} On October 8, 2004, the trial court filed a decision denying defendant's motion for summary judgment and granting defendant's motion for judgment on the pleadings. The court denied defendant's motion for summary judgment based upon a finding that all fees and costs assessed in the action had been paid. The court granted defendant's motion for judgment on the pleadings finding that, because plaintiff had alleged only that the APA improperly applied its guidelines in denying parole and had not alleged that he was denied parole for a constitutionally impermissible reason, the APA's decision was not subject to judicial review under the declaratory judgment statute, R.C.2721.03. The court further found that, even if a declaratory judgment action was an appropriate vehicle through which to challenge defendant's decision to deny plaintiff parole, plaintiff's claim would nevertheless fail as a matter of law because defendant had discretion to determine whether plaintiff should serve his maximum sentence, and such discretion included deviating from the recommended guideline range. The trial court also determined that plaintiff had received meaningful consideration for parole, rendering his request for injunctive relief requiring the same moot. The trial court indicated that counsel for defendant should prepare, circulate, and submit a judgment entry reflecting the court's decision within five days of the filing of the decision.
 {¶ 21} On October 14, 2004, the trial court filed a judgment entry addressing issues related solely to plaintiff's motion to compel. The court stated:
* * * Having reviewed the documents Defendant produced, and based upon concerns about security, Plaintiff's mental health treatment, and confidentiality, this Court finds that Defendant need not produce the documents submitted for in camera review. Additionally, contrary to Plaintiff's contention, records pertaining to parole proceedings do not qualify as "public records" in Ohio. R.C. 149.43.
 {¶ 22} On November 9, 2004, plaintiff filed a notice of appeal from "the Judgment filed on October 14, 2004 and the Decision Granting Motion for Judgment on the Pleadings filed on October 8, 2004 that dismissed the Plaintiff's case." On September 13, 2005, this court dismissed plaintiff's appeal on jurisdictional grounds, as no appealable judgment entry appeared in the record certified to this court on November 19, 2004.Curtis v. Adult Parole Auth., Franklin App. No. 04AP-1214,2005-Ohio-4781. On October 3, 2005, plaintiff filed a motion for reconsideration, along with a copy of the trial court's January 31, 2005 judgment entry. On October 21, 2005, this court journalized an entry granting plaintiff's motion for reconsideration and ordering the clerk of the trial court to supplement the record with the trial court's January 31, 2005 judgment entry. The matter has been submitted to this court upon the clerk's November 10, 2005 supplementation of the record.
 {¶ 23} Plaintiff asserts the following five assignments of error:
1. THE TRIAL COURT ERRED IN GRANTING APPELLEE ADULT PAROLE AUTHORITY'S MOTION TO DISMISS BY OVERLOOKING CONSTITUTIONAL ISSUES RAISED IN PLAINTIFF'S COMPLAINT[.]
2. THE TRIAL COURT ERRED BY REFUSING TO ENFORCE ITS OWN DISCOVERY ORDER AND BY REVERSING ITS ORDER COMPELLING DEFENDANT TO PRODUCE TO PLAINTIFF DOCUMENTS FUNDAMENTALLY RELEVANT TO HIS COMPLAINT[.]
3. THE TRIAL COURT ERRED IN ISSUING JUDGMENT ENTRY RENDERED OCTOBER 13, 2004[.]
4. THE TRIAL COURT ERRED IN FAILING TO CAUSE THE PROPER ENTRY TO BE PREPARED AND FILED[.]
5. THE TRIAL COURT ERRED IN FINDING THAT PLAINTIFF HAD RECEIVED MEANINGFUL CONSIDERATION FOR PAROLE[.]
 {¶ 24} In his first assignment of error, plaintiff contends the trial court erroneously dismissed his complaint for declaratory judgment. Since this matter arises out of the granting of a motion for judgment on the pleadings under Civ.R. 12(C), this court must conduct a de novo review of all legal issues without deference to the trial court's determination.Fontbank, Inc. v. Compuserve, Inc. (2000), 138 Ohio App.3d 801,807, citing Flanagan v. Williams (1993), 87 Ohio App.3d 768,772. A Civ.R. 12(C) motion for judgment on the pleadings presents only questions of law. Id., citing Compton v. 7-Up BottlingCo./Brooks Beverage Mgt. (1997), 119 Ohio App.3d 490, 492. Determination of a motion for judgment on the pleadings is restricted solely to the allegations in the pleadings, as well as any material incorporated by reference or attached as exhibits to those pleadings. Drozeck v. Lawyers Title Ins. Corp. (2000),140 Ohio App.3d 816, 820, citing Peterson v. Teodosio (1973),34 Ohio St.2d 161, 165, Civ.R. 7(A) and 10(C). See, also, Klein 
Darling, Civil Practice (1997), 779, at 12:10. Dismissal is appropriate under Civ.R. 12(C) only where, construing all material allegations in the complaint, along with all reasonable inferences drawn therefrom in favor of the nonmoving party, the court finds that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. State exrel. Midwest Pride IV, Inc. v. Pontious (1996),75 Ohio St.3d 565, 570. Thus, a court may grant a Civ.R. 12(C) motion only if no disputes of material fact exist and the pleadings demonstrate that the movant is entitled to judgment as a matter of law. Id.
 {¶ 25} A declaratory judgment action is a civil proceeding that provides a remedy in addition to other available legal and equitable remedies. Fugett v. Ghee, Franklin App. No. 02AP-618, 2003-Ohio-1510, at ¶ 15, citing Aust v. Ohio State Dental Bd.
(2000), 136 Ohio App.3d 677, 681. To maintain a declaratory judgment action, there must exist a real controversy between the adverse parties, which is justiciable in character, and which necessitates speedy relief to preserve the rights of the parties. Id. The only reasons that might support dismissal of a declaratory judgment action without addressing the merits of the case are if no justiciable issue or actual controversy exists between the parties or if a declaratory judgment will not terminate the uncertainty or controversy. Festi v. Ohio AdultParole Auth., Franklin App. No. 04AP-1372, 2005-Ohio-3622, at ¶11, citing Wilburn v. Ohio Dept. of Rehab. Corr. (Nov. 27, 2001), Franklin App. No. 01AP-198. For purposes of a declaratory judgment action, a "justiciable issue" requires the existence of a legal interest or right, and a "controversy" exists where there is a genuine dispute between parties with adverse legal interests. Festi, supra.
 {¶ 26} Declaratory judgment is the proper remedy to determine the constitutionality or constitutional application of parole guidelines. Hattie v. Anderson (1994), 68 Ohio St.3d 232, 235. However, where an inmate does not allege that parole was denied for a constitutionally impermissible reason, the APA's decision to deny parole is not subject to judicial review. Woodson v.Ohio Adult Parole Auth., Franklin App. No. 02AP-393, 2002-Ohio-6630, at ¶ 9. Here, the trial court concluded that plaintiff did not assert that the APA denied parole for a constitutionally impermissible reason. Plaintiff contends the trial court overlooked constitutional issues raised in his complaint, that is, violations of due process and equal protection.
 {¶ 27} Plaintiff contends the APA violated his due process rights by denying him access to parole board decision sheets and by erroneously basing its decision to deny parole on his alleged rejected sex offender treatment and his alleged mental health problems. An inmate does not have a constitutional or inherent right to be released before the expiration of a valid sentence.Collins v. Adult Parole Auth., Franklin App. No. 02AP-1161, 2003-Ohio-2952, at ¶ 11, citing State ex rel. Miller v. Leonard
(2000), 88 Ohio St.3d 46, 47. Under R.C. 2967.03, a parole determination lies within the absolute discretion of the APA.Woodson, supra. An inmate who is denied parole is not deprived of "liberty" if state law makes the parole decision discretionary. State ex rel Blake v. Shoemaker (1983),4 Ohio St.3d 42. The APA's use of internal guidelines does not alter the discretionary nature of the decision. Because the guidelines were not created by statute or regulation, and the parole board need not follow them, the guidelines place no "substantive limits on official discretion." Sims v. Ohio Adult Parole Auth. (Nov. 29, 2001), Richland App. No. 01CA36, citing Olim v. Wakinekona
(1983), 461 U.S. 238, 249, 103 S.Ct. 1741. Thus, an inmate is not deprived of a protected liberty interest when denied parole.State ex rel. Hattie v. Goldhardt (1994), 69 Ohio St.3d 123,125-126. An inmate can neither claim a violation of due process rights with respect to the parole determination nor challenge any procedure utilized to deny parole. Sims, citing Olim, supra. As a result, plaintiff's due process arguments are without merit.
 {¶ 28} Plaintiff also asserts that the APA violated his equal protection rights "by denying [him] parole citing mental health problems while releasing others [with mental health problems]" (Plaintiff's Second Amended Brief, at 7) and by extending his incarceration "far beyond others who have committed similar crimes, repeated similar crimes, or committed crimes of a more serious nature[.]" (Plaintiff's Second Amended Brief, at 8.) Initially, we note that these arguments were raised for the first time on appeal, and are not issues raised in plaintiff's complaint. It is well-established that arguments not raised in the trial court, and raised for the first time on appeal, need not be considered. State ex rel. Phillips v. Capots (Sept. 22, 1994), Franklin App. No. 94APE04-499, citing Miller v. WikelMfg. Co. (1989), 46 Ohio St.3d 76, 78.
 {¶ 29} Further, plaintiff would not have prevailed on these claims had he asserted them in his complaint. In Mayrides v.Ohio State Adult Parole Auth. (Apr. 30, 1998), Franklin App. No. 97APE08-1035, this court stated:
To succeed on a claim challenging a parole release decision and the broad discretion afforded the Parole Authority for purposes of establishing a violation of equal protection, a complaining party must show "exceptionally clear proof" that the board abused its discretion. * * * Specifically, the prisoner must show "purposeful discrimination" and then establish that the discrimination had a discriminatory affect on him." * * * Thus, "an equal protection plaintiff cannot prevail if the defendants have legitimate, non-discriminatory reasons for their actions." * * *
Id., quoting Nedea v. Voinvovich (N.D.Ohio 1998), D.C. No. 1:97-CV-521.
 {¶ 30} The record in this case does not reflect purposeful discrimination on the part of the APA. Moreover, the APA cited legitimate, non-discriminatory bases for its decisions. Further, to the extent plaintiff contends the guidelines themselves violate equal protection, we note that the guidelines are not binding and do not control the APA's discretion in determining when to grant parole. Id. Consequently, plaintiff cannot sustain an equal protection challenge to the guidelines or their application to the APA's parole decisions. Id., citing Waryck v.Adult Parole Auth. (Apr. 29, 1996), Hocking App. No. 95CA16.
 {¶ 31} Plaintiff's complaint essentially challenges the APA's application of the parole guidelines to his parole decision. Declaratory judgment provides a remedy to determine the construction or validity of a constitutional provision, statute, rule, deed, will or written agreement. See R.C. 2721.03. Because the parole guidelines are not constitutional provisions or statutes and have not been adopted as rules, the parole guidelines are not subject to the declaratory judgment statute.Woodson; Phillips, supra. For the foregoing reasons, plaintiff's first assignment of error is overruled.
 {¶ 32} Plaintiff's second assignment of error challenges the trial court's denial of his motion to compel. Initially, we note that documents pertaining to parole proceedings do not constitute public records subject to inspection. R.C. 149.43(A)(1); Stateex rel. Lipschutz v. Shoemaker (1990), 49 Ohio St.3d 88, 90;State ex rel. Askew v. Goldhart (1996), 75 Ohio St.3d 608, 610;State ex rel. Wallace v. Ghee (May 2, 1995), Franklin App. No. 94APD09-1352.
 {¶ 33} Moreover, trial courts enjoy broad discretion in the management of discovery. State ex rel. Daggett v. Gessaman
(1973), 34 Ohio St.2d 55, 57. Thus, the standard of review of a trial court's decision in a discovery matter is whether the court abused its discretion. Mauzy v. Kelly Services, Inc. (1996),75 Ohio St.3d 578, 592. "`Abuse of discretion' implies that the court acted in an unreasonable, arbitrary, or unconscionable manner." State ex rel. Sartini v. Yost, 96 Ohio St.3d 37,2002-Ohio-3317, at ¶ 21. Upon thorough review of the records submitted in camera to the trial court, we find that the trial court did not abuse its discretion in concluding that security, mental health, and confidentiality concerns bar plaintiff's access to the records. The second assignment of error is overruled.
 {¶ 34} Plaintiff's third and fourth assignments of error concern the trial court's alleged failure to file a judgment entry. As noted, a judgment entry dismissing plaintiff's complaint for declaratory judgment was filed on January 31, 2005. Accordingly, the third and fourth assignments of error are moot.
 {¶ 35} By the fifth assignment of error, plaintiff contends, citing Layne, that the trial court erred in finding that he received meaningful consideration for parole. In Layne, the Ohio Supreme Court defined "meaningful consideration for parole" as "consist[ing] of more than a parole hearing in which an inmate's offense of conviction is disregarded and parole eligibility is judged largely, if not entirely, on an offense category score that does not correspond to the offense or offenses of conviction set forth in the plea agreement." Id. at ¶ 27. The court ultimately held that "[i]n any parole determination involving indeterminate sentencing, the [APA] must assign an inmate the offense category score that corresponds to the offense or offenses of conviction." Id. at syllabus. Here, the APA's application of parole guidelines to plaintiff was consistent withLayne. The APA assigned plaintiff an offense category score of 10. According to documentation in the record, category 10 of the revised guidelines includes the offense of rape.
 {¶ 36} Plaintiff does not challenge his offense category score. Indeed, plaintiff asserted in his complaint that the APA "assigned the appropriate Offense Category (10)." (Complaint, ¶ 16.) Rather, plaintiff contends the APA erroneously based its decision upon his alleged rejection of sexual offender treatment and his alleged mental health issues. Plaintiff contends that neither of these reasons are supported by the facts. Plaintiff asserts that he has attended all recommended sexual offender treatment programs and that the APA has unfairly characterized his "independent religious belief system" as a mental illness.
 {¶ 37} The APA has "wide-ranging discretion" in parole matters. Layne at ¶ 28. "When considering an inmate for parole, [the APA] still retains its discretion to consider any circumstances relating to the offense or offenses of conviction, including crimes that did not result in conviction, as well as any other factors the APA deems relevant." Id. Both the Revised Code and the Ohio Administrative Code grant the APA authority to "investigate and examine [an inmate] concerning his [or her] mental and moral qualities and characteristics and any other matters affecting [an inmate's] fitness to be at liberty without being a threat to society." Fugett, at ¶ 17.
 {¶ 38} As the trial court noted, the decisions of the APA demonstrate that it considered, among other things, the nature and extent of plaintiff's criminal conduct, his mental health issues, his prison programming and input from third parties both in support of and against plaintiff's release. In addition, the most recent assessments of plaintiff's case involved a clinical risk assessment, a lengthy interview with an APA board member and an interview with a representative of the ODRC's Sex Offender Program. As did the trial court, we conclude that the pleadings and the documents attached thereto demonstrate that plaintiff has been considered for parole multiple times, that the APA assigned plaintiff the proper offense category and risk scores under the applicable parole guidelines, and that the APA appropriately considered other relevant factors in its decision-making process. Upon review, we find that the trial court did not err in concluding that plaintiff received meaningful consideration for parole, rendering his request for injunctive relief requiring the same moot. The fifth assignment of error is overruled.
 {¶ 39} Having overruled plaintiff's first, second and fifth assignments of error, and having overruled as moot plaintiff's third and fourth assignments of error, this court hereby affirms the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
Petree and McGrath, JJ., concur.
McCormac, J., retired, of the Tenth Appellate District, assigned to active duty under the authority of Section 6(C), Article IV, Ohio Constitution.