**[Cite as *Brust v. Ohio Parole Bd.*, 2023-Ohio-4104.]**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Shawn K. Brust et al., | : | |
| Plaintiffs-Appellants, | : | |
| v. | : | No. 22AP-581<br>(C.P.C. No. 21CV-3015) |
| Ohio Parole Board et al., | : | (REGULAR CALENDAR) |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on November 14, 2023

**On brief:** *David J. Carey*, and *Carlen Zhang-D'Souza*, ACLU of Ohio Foundation; *Freda J. Levenson*, ACLU of Ohio Foundation; *David A. Singleton*, *Mark A. Vander Laan*, and *Pamela H. Thurston*, Ohio Justice & Policy Center; and *Tiffanny L. Smith*, UDC David A. Clarke School of Law, for appellants. **Argued:** *David J. Carey*.

**On brief:** *Dave Yost*, Attorney General, *D. Chadd McKitrick*, and *Adam Beckler*, for appellees. **Argued:** *D. Chadd McKitrick*.

**On brief:** *Friedman, Gilbert + Gerhardstein*, and *Alphonse A. Gerhardstein*; *Roderick & Solange MacArthur Justice Center*, *Kathrina Szymborski*, and *Megha Ram*; *Roderick & Solange MacArthur Justice Center*, and *Andrea Lewis Hartung*, for Amici Curiae Due Process Institute, Cincinnati Black United Front, Abolitionist Law Center, and Roderick & Solange MacArthur Justice Center in support of appellants.

APPEAL from the Franklin County Court of Common Pleas

LELAND, J.

{¶ 1} Plaintiffs-appellants, Shawn K. Brust and Melissa Grasa, appeal from a judgment of the Franklin County Court of Common Pleas granting the motion filed by defendants-appellees, the Ohio Parole Board (the "Board") and the Ohio Department of Rehabilitation and Correction ("ODRC") (collectively "appellees") to dismiss appellants' action for declaratory judgment and/or injunctive relief. For the reasons that follow, we reverse.

## I. Facts[1] and Procedural History

{¶ 2} Appellants are inmates currently incarcerated in Ohio correctional institutions who were approved for release at their respective institutional parole hearings but then denied parole after a full board hearing. They seek declaratory judgment concerning appellees' internal policy of absolute confidentiality and non-disclosure of written statements made by victims' families or representatives that are presented to the Board for purposes of the full board hearing, and which they allege caused them to be denied parole.

{¶ 3} Appellants' experiences within the Ohio justice system, in part relevant to this case, are similar. Appellant Brust was convicted of murder with a firearm specification and was sentenced by a judge to 15 years to life for the murder count and an additional 3 years for the firearm specification. The Board denied Brust parole in 2015 and 2018 and set the next hearing—the topic of the current round of litigation—for 2020.

{¶ 4} In May 2020, the Board held an "institutional hearing" on Brust's eligibility for parole and approved his release by an 8 to 0 vote. (Compl. at 8.) The Board stated Brust had served over 22.5 years of his sentence, utilized his time in prison well and completed risk relevant programming, improved his conduct as an inmate, and benefitted from a supportive family and a realistic release plan. The Board thus found him suitable for release and unanimously recommended parole pending a full board hearing determination.

{¶ 5} The Office of Victim Services ("OVS") petitioned for a "full board hearing" on behalf of the parents of the victim. (Compl. at 9.) The Board granted the petition and set the full board hearing for August 2020. According to the complaint, the factors in favor of

---

[1] Consistent with the Civ.R. 12(B)(6) standard of review, the facts presented in this decision reflect those stated in the complaint and do not establish such facts for any other purpose.

Brust's release did not change, and the Board "received no new information about the nature and seriousness of [] Brust's crime, * * * information indicating a heightened risk of recidivism," or "information casting doubt on the viability of [] Brust's reentry plan." (Compl. at 10.)   Rather, Brust contends the only new information before the Board for purposes of the full board hearing was newly submitted victim statements. "Upon information and belief, the [victim's] family submitted letters to the Board and/or [O]DRC after [] Brust's institutional hearing and before his full board hearing, objecting to [] Brust's release." (Compl. at 9.)  "The contents of those letters were not disclosed to [] Brust or his counsel." (Compl. at 9.)

{¶ 6}   During the full board hearing, Brust's sister and her husband spoke in favor of his release, the Assistant Prosecuting Attorney "did not argue strenuously for parole to be denied," and the parents of the victim spoke in favor of denying Brust parole.  (Compl. at 9.) The parents of the victim did not, during the hearing itself, mention "any fact or event suggesting that [] Brust might be a threat to the community or to any individual." (Compl. at 9-10.)   At the conclusion of the full board hearing, the Board voted 6 to 4 to deny Brust parole.

{¶ 7}   Appellant Grasa, following a trial that involved the issue of Battered Women's Syndrome, was convicted of aggravated murder of her husband and sentenced to a prison term of 20 years to life.  Grasa was denied parole in 2008 and again in 2014.  However, at her June 2020 institutional hearing, the Board determined Grasa was suitable for release by a 6 to 4 vote.  The Board found Grasa had served a sufficient portion of her sentence, completed programming to abate her risk to re-offend, and had a supportive release plan.

{¶ 8}   Certain members of the victim's family petitioned for a full board hearing, and the Board granted the petition and set the hearing for September 2020.  Like Brust, Grasa contends the only new information the Board received between the institutional hearing and the full board hearing appeared in "victim-related submissions." (Compl. at 17.) As in Brust's case, the Board refused to disclose this new information to Grasa or her counsel.  At the full board hearing, one of the victim's family members and Grasa's two daughters offered support for Grasa's release.  Two other family members of the victim spoke to oppose Grasa's release.  Several members of the Board indicated during the hearing that they believed the jury, in convicting Grasa, found that she had not been abused

by her husband.  At the conclusion of the full board hearing, the Board voted 6 to 4 to deny Grasa parole.

{¶ 9}   Grasa obtained a full board rehearing in March 2021 based on the Board's comments about the jury disbelieving her contentions of abuse, which potentially impacted the Board's decision to deny her parole.  She submitted an affidavit from a jury member attesting to the jury's "widespread agreement * * * that [Grasa] was violently abused by her husband" but dispute among the jury members regarding whether she nevertheless knew right from wrong at the time of the murder.  (Compl. at 19.)

{¶ 10} Grasa alleges that, prior to the March 2021 rehearing, "[u]pon information and belief, * * * certain family members and friends of [the victim] submitted to the Board written and other materials opposing [] Grasa's release."  (Compl. at 21.)  Grasa's counsel requested the Board disclose all documents submitted by the victim's family to the Board prior to the hearing, and the Board refused the request.  Following the full board rehearing, the Board voted 6 to 3 to again deny Grasa parole.

{¶ 11} On May 13, 2021, appellants brought an action for declaratory judgment and/or injunctive relief against appellees.  Appellants alleged appellees have an "internal policy of absolute confidentiality" and non-disclosure concerning written statements made by victims' families or representatives that are presented to the Board for purposes of the full board hearing. (Compl. at 20.)  Appellees "treat such statements as strictly secret, and will not voluntarily disclose their contents to either the person being considered for parole or that individual's counsel, under any circumstances," which renders any request for such information "futile." (Compl. at 10.)

{¶ 12} Appellants asserted in their complaint that this policy eliminates the ability of appellants and their counsel to rebut, explain, or contextualize any allegations in those statements, creating the potential for a victim "veto." (Compl. at 10, 18.)  In appellants' view, this policy of absolute confidentiality is unsupported by law, which they contended does permit appellees to consent to the release of victim statements and authorizes confidentiality only in certain situations, such as when the safety and security of the victim is involved.  Appellants further alleged they pose no risk to the victims and that no information regarding a safety concern had otherwise been presented to the Board prior to the full board hearing.  Therefore, if the victim statements alleged appellants threatened

their safety, the Board relied on information it knows is inaccurate, and appellants, through counsel, should have been given the opportunity to dispute and correct any such misinformation. On the other hand, if the victim statements did not allege appellants threatened their safety, appellants contended that information is not confidential under the law and should have been provided to appellants.

{¶ 13} Appellants further asserted that appellees' policy of absolute confidentiality denied them meaningful consideration for parole, violating the minimal due process expectation set forth in *State ex rel. Keith v. Ohio Adult Parole Auth.*, 141 Ohio St.3d 375, 2014-Ohio-4270, ¶ 25 ("*Keith I*") since the policy effectively prevents appellants from disputing and correcting inaccuracies, misstatements, or falsehoods contained in the victim submissions. As a result, appellants sought two declarations from the trial court:

> [Appellees'] policy of refusing to disclose written statements by victims' representatives or families violates the rights of [appellants], and others similarly situated, to meaningful consideration for parole;
>
> [Appellants] are entitled to the release of such written statements to themselves and/or their counsel, in a fashion that would timely afford an opportunity to ascertain the presence and extend of inaccurate, misleading, and/or incomplete information contained in those statements, and to respond[.]

(Compl. at 25.) Appellants additionally requested a permanent injunction requiring appellees to cease implementation of the policy.

{¶ 14} On June 16, 2021, appellees filed a motion to dismiss, pursuant to Civ.R. 12(B)(6), for failure to state a claim for a declaratory judgment. In the motion, appellees essentially agreed with appellants' position that they employ a policy of absolute confidentiality and non-disclosure with regard to victim related statements but asserted they are mandated to do so by law: "[Appellees] are mandated under multiple sections of both the Ohio Revised and Administrative Codes to keep [victim] statements confidential" and, when they are asked about those statements, will "neither confirm nor deny written victim statements exist." (Mot. to Dismiss at 2.) In support of this position, appellees primarily relied on R.C. 5120.21(D)(5), 5120.60(G), Ohio Adm.Code 5120-9-49(C)(4), 5120:1-1-36(B), (D), (F) through (I), 5120:1-1-14, and ODRC Policy 105-PBD-06.

{¶ 15} Appellees further contended that, even if they were permitted to disclose victim statements, a justiciable controversy does not exist to support appellants' complaint since appellants did not, and cannot, refer to any specific false statement contained within a written victim statement provided to the Board and can only speculate that false information was provided to the Board. Without asserting a credible allegation showing the purported written victim statements contained significant errors or false information, appellees contended appellants cannot demonstrate they were denied meaningful consideration for parole under prevailing Supreme Court of Ohio precedent, including *Keith I*.

{¶ 16} Appellees noted Brust has attempted to expand the definition of meaningful consideration in the context of a parole hearing before, and the Supreme Court in *State ex rel. Brust v. Chambers-Smith*, 156 Ohio St.3d 331, 2019-Ohio-857, determined inmates do not have a due process right to review their parole record prior to a hearing. Appellees add that their policy of keeping all written victim statements confidential is rationally related to an obvious legitimate government interest in keeping victims and their families and representatives safe and to ensure the hearing is free from material interference.

{¶ 17} Lastly, appellees argued in support of their motion to dismiss that appellants failed to plead a justiciable controversy exists in this case since consideration of written victim statements is only 1 of 15 statutory factors the Board must consider in determining parole, and appellants make no claim they were denied parole solely based on purported written victim statements, and because appellants may seek relief through alternative legal remedies. Namely, appellees suggest appellants could seek reconsideration of the Board's decision following the full hearing to deny parole or pursue mandamus relief to instruct appellees to research potential false information contained within purported written victim statements.

{¶ 18} Appellants filed a memorandum in opposition to the motion to dismiss on June 30, 2021. In it, appellants argued: appellees' contentions exceeded the liberal notice-pleading standard in Ohio; appellees' policy of absolute secrecy renders *Keith I*'s requirements meaningless and constitutes a denial of meaningful consideration for parole; appellants' claim is consistent with R.C. 5120.21(D) and nothing in Ohio law mandates victim statements must be kept confidential in every situation; the instant case is

distinguishable from the 2019 *Brust* case since appellants do not seek review of their parole record or internal Board memoranda at issue in that action; the Board violated appellants' right to due process by, upon information and belief, denying them parole based on secret, false accusations; and appellants need not allege appellees' policy was the sole basis for denial of parole to avoid dismissal of their declaratory action. Appellees filed a reply to the memorandum contra on July 9, 2021 reiterating that appellants sought to expand the minimal due process rights afforded to inmates eligible for parole under *Keith I* and that Ohio law "plainly and unambiguously mandates the confidentiality of victim statements." (Reply at 6.)

{¶ 19} On August 24, 2022, the trial court granted appellees' motion to dismiss on two main bases. First, the trial court determined that "[appellees] have established no justiciable issue exists because Ohio law and administrative rules require that victim statements be kept confidential." (Decision at 4.) Second, the trial court concluded "[appellants] have not shown they were denied meaningful consideration for parole" because: there is "no credible evidence that the Board relied on inaccurate records to make their decision to deny parole"; appellants failed to allege "credible evidence demonstrating a specific confidential victim statement caused their parole denial"; and "there is a legitimate government interest in keeping victim statements confidential in order to deter potential harm to victims overall," even if "these [case specific] [p]laintiffs have not actually threatened anyone." (Decision at 11-14.) As a result, the trial court dismissed appellants' complaint, and appellants filed a timely appeal.

## II. Assignment of Error

{¶ 20} Appellants assign the following assignment of error for our review:

> The trial court erred in granting Defendant-Appellees' Civil Rule 12(B)(6) motion to dismiss, as Plaintiff-Appellants' due-process right to parole decisions based on accurate information necessarily includes a right to know the allegations offered against them during the parole process, including allegations offered in writing by victims or victims' representatives.

## III. Standard of Review

{¶ 21} "A Civ.R. 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted is procedural and tests the sufficiency of the complaint." *State ex rel.*

*Semenchuk v. Ohio Adult Parole Auth.*, 10th Dist. No. 19AP-361, 2019-Ohio-4641, ¶ 11, citing *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.*, 65 Ohio St.3d 545, 548 (1992). "In ruling on a motion to dismiss, pursuant to Civ.R. 12(B)(6), the court must construe the complaint in the light most favorable to the plaintiff, presume all factual allegations in the complaint are true, and make all reasonable inferences in favor of the plaintiff." *Id.*, citing *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192 (1988).

**{¶ 22}** "In reviewing a Civ.R. 12(B)(6) motion to dismiss, the court may not rely on allegations or evidence outside the complaint." *Smith v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 22AP-604, 2023-Ohio-1007, ¶ 12. "A trial court properly dismisses a complaint for failure to state a claim when it appears, beyond doubt, that the plaintiff can prove no set of facts entitling him to relief." *Semenchuk* at ¶ 12, citing *Coleman v. Columbus State Community College*, 10th Dist. No. 15AP-119, 2015-Ohio-4685, ¶ 6. An appellate court reviews a decision on a Civ.R. 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted under a de novo standard of review. *Foreman v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 14AP-15, 2014-Ohio-2793, ¶ 9.

**IV. Analysis**

**{¶ 23}** Appellants challenge the trial court's decision to dismiss their action for declaratory judgment. Appellants contend dismissal was inappropriate because appellants have a due process right to parole decisions based on accurate information, and this right necessarily included the right to know the allegations made against them during the parole process, including written allegations submitted by victims or victims' representatives and families. Appellants further argue that Ohio's statutes and rules do not mandate absolute confidentiality of statements submitted by victims' families and representatives, and appellees' policy to that effect violates appellants' constitutional due process rights.

**{¶ 24}** Initially, we note that pursuing an action for declaratory judgment is an appropriate means to obtain a judicial statement regarding appellants' rights under the pertinent statutes, rules, and constitutional due process provisions and to challenge the constitutionality of appellees' application of parole guidelines. *See* R.C. 2721.03 (permitting "any person whose rights, status, or other legal relations are affected by a constitutional provision, statute, [or] rule" to "have determined any question of construction or validity arising under the * * * constitutional provision, statute, [or] rule

* * * and obtain a declaration of rights, status, or other legal relations under it"); *Curtis v. Ohio Adult Parole Auth.*, 10th Dist. No. 04AP-1214, 2006-Ohio-15, ¶ 25 ("A declaratory judgment action is a civil proceeding that provides a remedy in addition to other available legal and equitable remedies."); *Id.* at ¶ 26, citing *Hattie v. Anderson*, 68 Ohio St.3d 232, 235 (1994) ("Declaratory judgment is the proper remedy to determine the constitutionality or constitutional application of parole guidelines.").

**{¶ 25}** "[T]he three prerequisites to declaratory relief are (1) a real controversy between the parties, (2) justiciability, and (3) the necessity of speedy relief to preserve the parties' rights." *ProgressOhio.org, Inc. v. JobsOhio*, 139 Ohio St.3d 520, 2014-Ohio-2382, ¶ 19, citing *Burger Brewing Co. v. Liquor Control Comm.*, 34 Ohio St.2d 93, 97 (1973), and R.C. 2721.03. A "justiciable issue" in this context "requires the existence of a legal interest or right," and a " 'controversy' exists where there is a genuine dispute between parties with adverse legal interests." *Curtis* at ¶ 25. If a declaratory judgment "will not terminate the uncertainty or controversy" the declaratory action may also be dismissed. *Id.*

**{¶ 26}** The trial court dismissed this case after determining no justiciable controversy exists for two main reasons: (1) Ohio law and administrative rules require that written victim statements be kept confidential during the parole process, and (2) appellants failed to show they were denied meaningful consideration for parole. As detailed below, we conclude appellants succeeded in showing the trial court erred on both bases.

**(A)  Ohio law does not mandate absolute confidentiality of written statements made by victims or their families and representatives that are provided to the Board for consideration at a full board hearing considering an inmate's request for parole.**

**{¶ 27}** Appellees contend they are "[m]andated" by the applicable statutes and rules to keep written victim statements confidential and "bar[red]" from releasing such information to inmates or their counsel. (Appellees' Brief at 46, 49.) Citing to R.C. 5120.21(D)(5), 5120.60(G), Ohio Adm.Code 5120-9-49(C)(4) and 5120:1-1-36, appellees specify that "[a]t no time" does Ohio law or the administrative code "allow statements written by victims or victim representatives for consideration of parole to be provided to the incarcerated individual and/or their representative[s]." (Appellees' Brief at 17.)

Appellants dispute appellees' reliance on Ohio law to support their hardline policy, citing exceptions to confidentiality within the statutes and rules. We agree with appellants.

{¶ 28} First, R.C. 5120.21(D), which concerns records kept by ODRC, provides in part pertinent to this case:

> Except as otherwise provided by a law of this state or the United States, the department and the officers of its institutions shall keep confidential and accessible only to its employees, except by the consent of the department or the order of a judge of a court of record, all of the following:
>
> * * *
>
> (5) Victim impact statements and information provided by victims of crimes that the department considers when determining the security level assignment, program participation, and release eligibility of inmates[.]

{¶ 29} Thus, pursuant to R.C. 5120.21(D)(5), victim impact statements and information provided by victims that ODRC considers when determining release eligibility of inmates is generally confidential and accessible only to its employees. However, the general rule requiring victim statements to be kept confidential is subject to three exceptions: (1) where a law of this state or the United States provides otherwise, (2) by the consent of ODRC, and (3) or by the order of a judge of a court of record. R.C. 5120.21(D)(5), *State ex rel. Sultaana v. Mansfield Corr. Inst.*, ___ Ohio St.3d. ___, 2023-Ohio-1177, ¶ 31 (discussing that records referenced in R.C. 5120.21, though generally confidential and accessible only to ODRC, may be released pursuant to the stated exceptions).

{¶ 30} Next, R.C. 5120.60 concerns information provided to the OVS, housed within ODRC. Pursuant to R.C. 5120.60(G), "[i]nformation provided to [OVS] by victims of crime or a victim representative" that is "for the purpose of program participation, of receiving services, or to communicate acts of an inmate or person under the supervision of the adult parole authority that threaten the safety and security of the victim shall be confidential and is not a public record under [R.C.] 149.43." Thus, R.C. 5120.60(G), another "law of this state" as referenced in R.C. 5120.21, carves out specific situations where Ohio law mandates victim statements are not public records. It does not mandate confidentiality and non-

disclosure of every victim statement to a potential parolee or their counsel despite the circumstance.

{¶ 31} Appellees also cite two administrative code sections as the source of the absolute confidentiality mandate. At the outset we note that "[a]n administrative rule cannot add or subtract from the legislative enactment" and therefore courts read administrative rules to be in harmony with the applicable statutes, if possible. *Nelson v. Mohr*, 10th Dist. No. 13AP-130, 2013-Ohio-4506, ¶ 14 ("[W]hen by statutory authority an administrative agency promulgates rules and regulations governing its activities and procedures, such rules are valid and enforceable unless they are unreasonable or in conflict with statutory enactments covering the same subject matter.").

{¶ 32} The first administrative code cited by appellees is Ohio Adm.Code 5120:1-1-36, which amplifies R.C. 5120.21. Appellees are correct that victim statements are not expressly included in the list of Board documents deemed "public records" in this code section. *See* Ohio Adm.Code 5120:1-1-36(B). *See also* R.C. 149.43(A)(1)(b) (stating records pertaining to parole proceedings are not "public record(s)"). However, the rule then provides multiple sections specifying when non-public parole board records may be released and only expressly restricts ODRC inmates from receiving non-public parole board records "of other inmates." Ohio Adm.Code 5120:1-1-36(D) through (F).

{¶ 33} For example, ODRC is required to make certain non-public parole board documents available to an inmate's attorney, including the parole candidate information sheets, the Board's decision sheets and criminal history risk score, the hearing officer's sanction receipt, post-release control result notifications, and any revocation orders. Ohio Adm.Code 5120:1-1-36(D). Other non-public parole board records may also "be made available after a written request is received which specifically identifies the records being requested" and after a review process. Ohio Adm.Code 5120:1-1-36(F).

{¶ 34} Specifically, upon receipt of a written request for non-public parole board records, and prior to making any non-public parole board record available for inspection, ODRC is directed to "review the requested record for information which if released could present a security risk to any institution operated by the department or could jeopardize the safety of any department personnel" and to review the document for certain sensitive information, including "documents that identify the victim of a crime committed by the

offender." Ohio Adm.Code 5120:1-1-36(G). After this review is completed, the written request for non-public parole board records "shall be granted unless the disclosure of the records would foreseeably result in harm to any person, would present a security risk to any institution or other facility or would materially interfere with the achievement of a fair parole hearing." Ohio Adm.Code 5120:1-1-36(F). ODRC is prohibited from releasing only the "portion" of a non-public parole board record that contains the specified sensitive information. Ohio Adm.Code 5120:1-1-36(I) ("Any portion of a non-public parole board record that contains information outlined in paragraph (F) or (G) of this rule shall not be released.").

{¶ 35} Thus, read as a whole, Ohio Adm.Code 5120:1-1-36 does not set forth a blanket rule shielding written statements made by victims, their representatives, or their families for the Board's consideration at the full Board hearing from disclosure at all times, but instead requires ODRC to assess whether a requested non-public parole board record would foreseeably result in harm to any person, would present a security risk to any institution or other facility, or would materially interfere with the achievement of a fair parole hearing. If these limiting circumstances are not present, ODRC is required to release the document with appropriate safeguards for portions of those documents that contain sensitive information. Only those portions of non-public parole board documents identifying the victim (among other listed sensitive statements) cannot be released[2] under this rule. We note redaction is not precluded by rule as a means to adequately safeguard the sensitive information and is a method viewed favorably by the Supreme Court in similar contexts. *See State ex rel. Mobley v. Ohio Dept. of Rehab. & Corr.*, 169 Ohio St.3d 39, 2022-Ohio-1765, ¶ 26 ("[T]o the extent that a kite might contain information that is exempt from disclosure, those portions can be redacted.").

{¶ 36} Ohio Adm.Code 5120:1-1-36 is subject to Ohio Adm.Code 5120-9-49, another rule cited by appellees as mandating absolute confidentiality of victim statements. Ohio Adm.Code 5120:1-1-36(A). Ohio Adm.Code 5120-9-49 concerns public records kept by

---

[2] We note this part of the rule appears to be irrelevant to requests made by inmates and their counsel, who are readily aware of the victim's identity, and rather more likely concerns protecting the victim from public identification resulting from records requests made by non-parties.

ODRC and amplifies several statutes, including R.C. 5120.21 and 5120.60. The rule reads, in pertinent part:

> The following documents are not public records:
>
> * * *
>
> Information provided to the office of victim services by a victim of crime or a victim representative * * * for the purpose of program participation, of receiving services, or to communicate acts of an inmate or person under the supervision of the adult parole authority that threaten the safety and security of the victim. See section 5120.60 of the Revised Code.

Ohio Adm.Code 5120-9-49(C)(4). Contrary to appellees' position, rather than imposing a global mandate of non-disclosure, Ohio Adm.Code 5120-9-49(C)(4) follows R.C. 5120.60(G) in specifying certain situations where Ohio law dictates victim statements are not public records. Moreover, in later sections, Ohio Adm.Code 5120-9-49 expressly includes rules for when even non-public records may be disclosed, and specifically accounts for providing such documents to an inmate's counsel. *See* Ohio Adm.Code 5120-9-49(E)(4) (stating that "[Ohio Adm.Code] 5120:1-1-36 * * * lists certain non-public parole board records which may be disclosed, according to the procedures established in that rule, to the following representatives: * * * [a]n attorney designated by * * * the inmate."); Ohio Adm.Code 5120-9-49(G) ("[n]on-public records of the department may, in the sole discretion of the director, or designee, be made available to counsel of record of an inmate * * * or other persons with a need for access to such documents, subject to other restrictions on such access as may be provided by law").

{¶ 37} Overall, the statutes and rules cited by the parties do not mandate appellees employ a global policy of confidentiality and non-disclosure of written statements made by victims or their representatives and families and relied on by the Board to deny an inmate parole.[3] Rather, the clear and unambiguous language of the applicable statutes and rules

---

[3] We note appellees, during oral argument, appeared to concede this position by arguing the issue of inaccurate information and allegations within victim related statements is typically resolved by the Board asking about such issues during the full board hearing. Appellees agreed the Board is permitted to discuss the very information raised in written victim statements that appellees contend in this appeal they are mandated to keep confidential.

balance general confidentiality of victim statements with exceptions tailored to permit disclosure of such statements to inmates or their counsel that do not implicate safety, security, or fairness concerns. As a result, to the extent appellees' motion to dismiss, and the trial court's decision, relied on Ohio law "mandating" appellees' policy of absolute confidentiality of written victim statements, that position lacks merit and does not support dismissing appellants' complaint.

### (B) Appellants showed, sufficiently to meet the Civ.R. 12(B)(6) standard, that appellees' blanket policy of refusing to disclose written victim related statements violates their due process right to meaningful consideration for parole.

{¶ 38} The Due Process Clause in the Fourteenth Amendment to the United States Constitution states: "No State shall * * * deprive any person of life, liberty, or property, without due process of law." The Due Course of Law Clause in Article I, Section 16 of the Ohio Constitution provides: "All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay."

{¶ 39} "Due process is a flexible concept that varies depending on the importance attached to the interest at stake and the particular circumstances under which the deprivation may occur." *State v. Aalim*, 150 Ohio St.3d 489, 2017-Ohio-2956, ¶ 22, citing *Walters v. Natl. Assn. of Radiation Survivors*, 473 U.S. 305, 320 (1985). What process satisfies constitutional protections " 'depends on considerations of fundamental fairness in a particular situation.' " *Id.*, quoting *In re D.S.*, 146 Ohio St.3d 182, 2016-Ohio-1027, ¶ 28.

{¶ 40} In the context of due process protections for inmates seeking parole, Ohio law distinguishes between the parole decision itself and the process leading to that decision. *See Keith I*, 2014-Ohio-4270, at ¶ 24-25. "Ohio's system is entirely discretionary and creates no expectation of parole and no due-process right to parole itself." *Keith I* at ¶ 24. *See State v. Hacker*, ___ Ohio St.3d ___, 2023-Ohio-2535, ¶ 36, quoting *State ex rel. Seikbert v. Wilkinson*, 69 Ohio St.3d 489, 490 (1994) ("[W]hen the [Ohio Adult Parole Authority] is vested with discretion whether to grant parole to an offender, the offender has 'no expectancy of parole or a constitutional liberty interest sufficient to establish a right of procedural due process.' ").

{¶ 41} While Ohio prisoners have no liberty interest in parole itself, "having set up the system and defined at least some of the factors to be considered in the parole decision, the state has created a minimal due-process expectation" applicable to the decision-making process. *Keith I* at ¶ 25. Specifically, the Supreme Court has established that an inmate is entitled to "receive meaningful consideration for parole." *Id.* at ¶ 21, citing *Layne v. Ohio Adult Parole Auth.*, 97 Ohio St.3d 456, 2002-Ohio-6719, ¶ 27. Furthermore, this minimal due process expectation requires "the factors considered at a parole hearing," which includes any information received from a victim or a victim's representatives, "are to be as described in the statute or rule and are to actually and accurately pertain to the prisoner whose parole is being considered." *Id.* at ¶ 22, 25, citing Ohio Adm.Code 5120:1-1-07(B)(4).

{¶ 42} The minimal due process expectation expressed in *Keith I* does not require proactive action on the part of the parole authority, but instead is premised on the inmate's ability to notify the parole authority that "there may be substantive errors" in the materials relied on at a parole hearing. *Id.* at ¶ 27-30 ("[W]here there are credible allegations, supported by evidence, that the materials relied on at a parole hearing were substantively inaccurate, the [Ohio Adult Parole Authority] has an obligation to investigate and correct any significant errors in the record of the prisoner.").

{¶ 43} As a remedy, an inmate may obtain a writ of mandamus to correct such errors if he or she shows: (1) a credible allegation, supported by evidence, of a substantive inaccuracy or error in the materials relied on at a parole hearing, and (2) that the inaccuracy or error may have prevented the inmate from receiving meaningful consideration for parole, i.e., the allegedly erroneous information was material to the inmate's parole request. *State ex rel. Keith v. Dept. of Rehab. & Corr.*, 153 Ohio St.3d 568, 2018-Ohio-3128, ¶ 16 ("*Keith II*") ("[A] writ will issue when there is a credible claim of an error that may prevent the inmate's application from receiving meaningful consideration."); citing *Keith I* at ¶ 21, ¶ 30 (requiring "a showing that there may be substantive errors in [the inmate's] record that may influence the [Ohio Adult Parole Authority's] consideration of his[/her] parole").

{¶ 44} Appellants in this case essentially contend appellees' policy of absolute confidentiality is irreconcilable with minimal due process in this context and nullifies inmates' right to be assessed for parole based on an accurate record. As outlined below, we agree with appellants and find appellees' policy of absolute confidentiality to be both

fundamentally unfair under general due process principles and to have deprived appellants of meaningful consideration for parole as required to satisfy the "minimal due process" standard established by *Keith I* in this context.

{¶ 45} First, as previously discussed, fundamental fairness in a particular situation serves as the guardrail preventing government actions from infringing upon a citizen's due process rights. *See Aalim* at ¶ 22; *D.S.* at ¶ 28. Under appellees' policy of absolute confidentiality of victim statements, inmates can never have a remedy for correcting substantive errors in victim statements that may contribute to the parole decision. In other words, appellees' policy of absolute confidentiality is fundamentally unfair by preventing inmates from seeking redress through the channels to correct an inaccurate record established under *Keith I* and its progeny.

{¶ 46} Moreover, because appellees' blanket policy prevents inmates from correcting substantive errors in victim statements that may contribute to the parole decision, the Board may deny an inmate parole based on a materially inaccurate record. This falls short of the "meaningful consideration" due inmates seeking parole. *Keith I* at ¶ 23 ("Requiring the board to consider specific factors to determine the parolee's fitness for release would not mean anything if the board is permitted to rely on incorrect, and therefore irrelevant, information about a particular candidate."); *State ex rel. Bailey v. Ohio Parole Bd.*, 152 Ohio St.3d 426, 2017-Ohio-9202, ¶ 10, citing *Keith I* at ¶ 23 ("[A]n inmate is not afforded meaningful parole consideration if the parole authority bases its decision on information in an inmate's file that is substantively incorrect."). *See also Connecticut v. Doehr*, 501 U.S. 1, 14 (1991), quoting *Anti-Fascist Refugee Commt. v. McGrath*, 341 U.S. 123, 170-72 (1951) (Frankfurter, J., concurring) ("[F]airness can rarely be obtained by secret, one-sided determination of facts decisive of rights[.]").

{¶ 47} Therefore, drawing on the minimal due process expectation for inmates seeking parole outlined in *Keith I* and general principles of fundamental fairness, we conclude appellants stated a claim for the declaratory judgment they pursued in this case. Specifically, we conclude appellants stated a claim for a declaratory judgment seeking a declaration that appellees' policy of absolute confidentiality concerning written victim related statements denies inmates meaningful consideration for parole. We further find, after construing the complaint in the light most favorable to appellants, presuming all

factual allegations in the complaint are true, and making all reasonable inferences in favor of appellants, that appellants stated a claim for a declaratory action seeking a declaration that they or their counsel are entitled to the release of the written statements made by the victims' families in this case. *Keith I* and its progeny do not require the inmate to state the exact false statement to prompt an investigation, but rather requires the inmate to show there "may" be substantive errors that "may" have influenced the Board's decision. *Keith I* at ¶ 30; *Keith II* at ¶ 16. Appellants' allegations as to the written statements of the victims' families and the apparent impact on the parole decision here are sufficient to state a claim for purposes of the instant declaratory action.

{¶ 48} Appellees argue precedent of this court and the Supreme Court demand we come to the opposite conclusion. However, contrary to appellees' position, the instant case is distinguishable from cases such as *Brust, Phelps v. Ohio Parole Bd.*, 10th Dist. No. 22AP-175, 2023-Ohio-284, and *Moore v. Ohio Parole Bd.*, 10th Dist. No. 22AP-592, 2023-Ohio-3651, *appeal not accepted*, 2023-Ohio-3328.

{¶ 49} In *Brust*, Brust filed a writ of mandamus seeking, in pertinent part, an order compelling ODRC to correct alleged factual errors in his parole file and to grant him a new hearing. This court denied the writ, and the Supreme Court affirmed. In doing so, the Supreme Court disagreed with Brust's argument that a parole eligible inmate has a minimal due process right to review his or her record for error and introduce testimony or other evidence relating to *any* factual inaccuracy prior to a parole hearing. The court explained that neither *Keith I* nor *Keith II* require the Board to allow inmates to review their parole records and formally respond prior to a hearing, and that the Board policies only permitted an inmate to respond to the information discussed at the hearing and to submit any pertinent additional information. Therefore, under the legal standard applicable to evaluating writs of mandamus, the Supreme Court determined Brust had "failed to prove a clear legal right to review his parole record prior to a scheduled parole hearing." *Brust* at ¶ 21. Based on the scope and type of information requested in *Brust*, the different procedural posture, and the dissimilar core issue—which did not involve appellees' policy of absolute confidentiality concerning written statements from victims or their representatives and families—*Brust* is distinguishable from the instant case and, as a result, does not control the outcome of this appeal.

{¶ 50} *Phelps* and *Moore*, while declaratory actions, are similarly distinguishable. In *Phelps*, an inmate who was denied parole filed a declaratory judgment action requesting the common pleas court declare that the Board denied him meaningful consideration for parole for failing to provide him with the information considered at his unsuccessful parole hearing. *Phelps* at ¶ 5. The Board filed a motion to dismiss, pursuant to Civ.R. 12(B)(6), which was denied by the trial court. The Board then moved for summary judgment. Phelps did not file a reply to the motion for summary judgment, and the motion was granted. This court affirmed the trial court decision on appeal. Our decision to affirm was based both on Phelps' failure to respond to the motion for summary judgment, thereby failing to meet his reciprocal burden, and the breadth of his request for information, which we determined failed to evidence a substantive inaccuracy that impacted the Board's parole decision. *Id.* at ¶ 12, 22-26. Neither of these two conditions exist in the instant case.

{¶ 51} Likewise, in *Moore*,[4] an inmate who was denied parole filed a declaratory judgment action requesting the common pleas court declare that the Board denied him meaningful consideration for parole for failing to "provide him, in advance of the hearing, the documents the board planned to rely on related to his parole" and employing a policy that predetermined his parole should be denied. *Moore* at ¶ 3. This court upheld the trial court's decision to dismiss Moore's complaint based on his failure to identify any of the documents the Board withheld from him with specificity and, essentially, his desire to conduct a " 'fishing expedition' " for evidence to support his claim. *Id.* at ¶ 17, quoting *Beard v. New York Life Ins. & Annuity Corp.*, 10th Dist. No. 12AP-977, 2013-Ohio-3700, ¶ 28. Because Moore failed to set forth sufficient factual allegations to support his complaint and only set forth unsupported and conclusory assertions, we determined he failed to raise a cognizable claim that the board denied him meaningful consideration for parole, and, therefore, failed to plead a justiciable controversy to support the declaratory judgment action. On that basis, this court concluded the trial court did not err in granting the Board's Civ.R. 12(B)(6) motion to dismiss. As previously discussed, unlike in *Moore*, Brust in the instant case has set forth sufficient factual allegations to support his complaint concerning the unconstitutional impact of appellees' policy concerning written victim statements.

---

[4] On October 6, 2023, this court sua sponte ordered the parties to submit supplemental briefing on *Moore* and both parties filed timely responses.

{¶ 52} In essence, *Brust*, *Phelps*, and *Moore* do not address the constitutionality of appellees' policy of absolute confidentiality and non-disclosure of written statements made by victims, their representatives, and families to oppose an inmate's release at a full board hearing. Moreover, they constitute examples of cases where an inmate sought a broad array of parole records without credibly alleging specific records contain substantive errors that contributed to the Board denying the inmate parole. Considered collectively, *Brust*, *Phelps*, and *Moore* stand for the uncontroversial proposition that inmates do not have a universal and unfettered right to all information provided to the Board in advance of a full board hearing—requests akin to a "fishing expedition." *Moore* at ¶ 17.

{¶ 53} However, under the test outlined in *Keith I*, not all requests for parole records are equivalent and the test for whether an inmate may review certain parole records centers on whether the inmate has credibly alleged an error that is "substantive." *Keith I* at ¶ 27-30. As opposed to an unrestrained fishing expedition, the instant appeal concerns two inmates' targeted requests for statements made by the victims' families credibly alleged to have substantive errors that contributed to the Board denying appellants parole at the full board hearing, thereby reversing the inmates' initial approval for parole at the institutional hearing. As exhibited by the abrupt reversal of fortune for appellants in this case, a statement made by a victim, their representatives, or family member is an important and influential consideration for the Board in making its final parole determination. As a result, inaccuracies in those statements may be uniquely prejudicial, requiring vigilance in ensuring the accuracy of these statements through the minimal due process protection afforded inmates under *Keith I*. Considering the distinctions between the cases, contrary to appellees' position, *Brust*, *Phelps*, and *Moore* do not control the outcome here.

{¶ 54} Overall, we conclude appellants succeeded in pleading a justiciable controversy to support their complaint for declaratory action. As a result, we agree with appellants that the trial court erred in granting appellees' Civ.R. 12(B)(6) motion to dismiss appellants' complaint. In doing so, we emphasize that nothing in this decision should be construed to undermine the critical need to protect victims, their representatives, and families during the parole process, but instead conclude the Board must balance those victim protections with an inmate's minimal due process right to a parole decision based on substantively accurate information and consequent need for a pathway to correct

substantive errors.  We decline at this juncture to define parameters for the potential release of the statements at issue in this case and note appellants do not challenge as unconstitutional the applicable statutes or administrative rules that provide safeguards for victim statements in specific circumstances. Based on the foregoing, appellants' assignment of error is sustained.

**V. Conclusion**

{¶ 55} Having sustained appellants' sole assignment of error, the judgment of the Franklin County Court of Common Pleas is reversed and this case is remanded to that court for further proceedings in accordance with law and consistent with this decision.

*Judgment reversed,*
*cause remanded.*

BEATTY BLUNT, P.J., and MENTEL, J., concur.

_____